ROOSEVELT APARTMENTS, APPELLANT,
*v.* NICHOLS, DIRECTOR, ENVIRONMENTAL
PROTECTION AGENCY ET AL.,
APPELLEES.
PINE RIDGE VALLEY APARTMENTS,
APPELLANT, *v.* NICHOLS, DIRECTOR,
ENVIRONMENTAL PROTECTION AGENCY
ET AL., APPELLEES.

(Nos. 82AP-693 and -694—Decided
June 30, 1983.)

*Messrs. DuLaurence & DuLaurence,
Mr. Henry DuLaurence* and *Mr. Branka
A. Snajdar-Mismas,* for appellants.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Edward P. Walker*
and *Mr. Martyn T. Brodnik,* for appellees.

McCORMAC, J. Appellants, Roosevelt
Apartments and Pine Ridge Valley Apartments, are operators of three different
apartments of more than six units each,
all having incinerators for the disposal of
residential waste. Each appellant made
an application in July and August 1980,
for registration status of its incinerator in
accordance with former Ohio Adm. Code
3745-35-05 (prior to the amendment effective December 12, 1980). In response, the
Ohio Environmental Protection Agency
("EPA") sent letters indicating that the
applications were deficient due to a lack
of complete information on emissions.
Supplemental information was requested
and appellants were warned that failure
to comply would result in the return of
their applications as though never filed.

Appellants filed notices of appeal
from these letters with the Environmental Board of Review ("Board"). The
appeals were dismissed for lack of
jurisdiction on the basis that no appealable order had been entered. Those
dismissals were appealed to this court,
which reversed the board's decisions and

remanded the causes for further consideration. See *Cain Park Apartments* v. *Nied* (June 25, 1981), Nos. 80AP-817, -852, -867, -868 and -869, unreported.

A hearing on the merits of the appeals was then conducted before the board which found that the EPA acted in a reasonable and lawful manner with respect to the applications. Appellants have appealed, asserting the following assignments of error:

"I.  O.A.C. Rule 3745-35-05 violates the Equal Protection Clause of the Fourteenth Amendment since it arbitrarily and unreasonably classifies sources of air contaminants.

"II.  Sections 3704.01, *et seq.,* Ohio Revised Code are in contravention of Article II, Section 1 of the Ohio Constitution, as [an] unlawful delegation of legislative power.

"III.  The application of Section 3704.03(G), Ohio Revised Code, and regulations promulgated thereunder, particularly O.A.C. Rule 3745-17-09, upon previously constructed and legally constructed and legally operated incinerators

is a violation of Article II, Section 28 of the Ohio Constitution, prohibiting the enactment of retroactive legislation.

"A.  The Director of Environmental Protection Agency unconstitutionally usurped the power of the General Assembly to enact retroactive legislation by adopting O.A.C. Rules 3745-17-09 and 3745-35-05 and making them applicable to then existing and operating incinerators.

"IV.  The Environmental Board of Review erred in concluding that it was reasonable and lawful to return appellants' registration submittals when sufficient information was provided to show that the incinerators are within O.A.C. Rule 3745-35-05(F)(1).

"V.  The Director of Environmental Protection Agency does not have the legal right to require installation of additional equipment and testing by incinerator operators attempting to register pursuant to O.A.C. Rule 3745-35-05(F)(1)."

Appellants first assert that former Ohio Adm. Code 3745-35-05[1] constituted a violation of equal protection because it drew an arbitrary and unreasonable

---

[1] "3745-35-05 Exemptions

"(A)  With the exceptions set forth in subsections (E) and (F), infra, each air contaminant source shall submit to the Ohio EPA either an application for a permit to operate or an application for a variance, in the time, form and manner specified in these regulations.

"(B)  Where necessary for administrative reasons, the Director may exempt, for limited periods of time, certain classes of air contaminant sources, of relatively minor significance, from the requirement of obtaining permits to operate or variances from the Ohio EPA. Exemption under this subsection shall not relieve any source of the responsibility to submit to the Ohio EPA, within the required time, a substantially approvable application for a permit to operate or a variance. Applications from sources exempted under this subsection shall be subject to spot checks and such sources shall be subject to inspections.

"(C)  Exemption under this section shall not relieve any air contaminant source of the

responsibility to comply with applicable laws, ordinances, rules, or regulations of any political subdivision of the State of Ohio.

"(D)  Exemption from the requirement of obtaining permits or variances from the Ohio EPA under this section shall not be construed to relieve any air contaminant source of the responsibility to comply with all other requirements of applicable law, including, but not limited to, emission standards and limitations, satisfactory progress on compliance schedules, and interim reporting requirements.

"(E)  The following classes of sources shall not be required to apply for, or obtain, permits to operate or variances:

"(1)  Comfort ventilating systems;

"(2)  Sources used as incinerators in one or two family dwellings, or in dwellings containing six or fewer family units, one of which is owner-occupied;

"(3)  Sources located in dwelling units which burn oil, natural gas, or other fuel except coal, for the production of steam, hot water, or

classification among sources of air pollutants. They argue that the classification should have been based on a source's level of emission rather than on the numbers of units feeding an incinerator. Apartment buildings containing six or fewer family units were exempted while apartments with more than six units had to obtain a permit to operate an incinerator located therein. Appellants claim that the number of apartment units feeding the incinerator bore no rational basis to the level of pollution and resulted in unfair discrimination.

In considering an equal protection challenge, the question to be asked with regard to the classification is whether a proper governmental interest is furthered as a result of the distinction drawn. The test is as follows:

"* * * [T]he statute must be upheld if there exists any conceivable set of facts under which the classification rationally furthered a legitimate legislative objective. * * *" *Denicola* v. *Providence Hospital* (1979), 57 Ohio St. 2d 115, at 119 [11 O.O.3d 290].

A legitimate government interest is furthered in the regulation of a legislatively determined risk to public health and welfare caused by air pollutants from incinerators. The singling out of sources of pollution based upon the possible volume of pollution from a particular source does not constitute a violation of equal protection if there is a rational basis for the classification.

While it is undoubtedly true that some incinerators in residential apartment buildings, which are fed by six or fewer family units, create more pollution than some incinerators fed by a greater number of family units, it is reasonable to assume that there is some relationship between the number of units feeding the incinerator and the amount of pollution emitted.

Even assuming the method of classification to be debatable, it is based upon a rational determination which furthers a legitimate legislative objective.

Appellants' first assignment of error is overruled.

Appellants secondly contend that the General Assembly has unlawfully and unconstitutionally delegated its legislative authority to the EPA and its director in R.C. Chapter 3704.

There is not an unconstitutional delegation of legislative power to an administrative agency if the General Assembly establishes standards which are

---

hot air at rates of less than one million (1,000,000) British Thermal Units per hour when operated at the maximum rated capacities, and from which products of combustion are the sole emissions.

"(4) Such other sources of small emission significance as the Director may exempt.

"(F)(1) Sources of particulate matter of sulfur dioxide, whose emissions are regulated solely by Chapter 3745-17 of the OEPA Regulations and which have a maximum potential yearly emission of less than 25 tons of sulfur dioxide and a maximum potential yearly emission of less than 25 tons of particulate matter, shall not be required to apply for or obtain permits to operate or variances but shall be required to register with the Director. Registration shall be made in a form and manner prescribed by the Ohio EPA and shall contain the same information, affirmation, and signatures required for a substantially approvable application for a permit to operate or a variance.

"(2) The Director may require an air contaminant source otherwise exempt by this section to apply for and obtain a permit to operate or a variance to operate from the Ohio EPA if he concludes that the source has violated, is violating, or may violate any air contaminant emission standard or regulation of the Ohio EPA.

"(3) For purposes of this subsection 'maximum potential yearly emission' shall mean the total weight of particulate matter or sulfur dioxide which is, or in the absence of an air cleaning device would be, emitted from an air contaminant source in one year's time."

sufficient to guide and restrict the agency in the exercise of the power conferred. *Matz* v. *J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271 [8 O.O. 41]. The standards must be adequate to prevent arbitrary and capricious acts on the part of the agency or its director. See *American Cancer Society* v. *Dayton* (1953), 160 Ohio St. 114, at 124, 125 [47 O.O.2d 164].

The director of the EPA derives his authority to adopt regulations relating to ambient air quality and to emission of air contaminants from R.C. 3704.03(D) and (E). Standards promulgated by the legislature in R.C. Chapter 3704 detail a clear policy to be pursued by the EPA to prevent, control, and abate air pollution and provide specific procedural safeguards to prevent arbitrary and capricious actions on the part of the EPA. Hence, there is no unlawful delegation of legislative power to an administrative agency. See *State* v. *Acme Scrap Iron* (1974), 49 Ohio App. 2d 371 [3 O.O.3d 444].

Appellants' second assignment of error is overruled.

Appellants thirdly contend that R.C. 3704.03(G) and the regulations promulgated thereunder, particularly Ohio Adm. Code 3745-17-09, violate Section 28, Article II of the Ohio Constitution, prohibiting the enactment of retroactive legislation as applied to incinerators which were existing and operating at the time of the enactments.

That contention is not well-made. The prohibition against retroactive laws is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions. The General Assembly may not pass new laws to reach back and create new burdens, new duties, new obligations, or new liabilities upon past conduct. *Lakengren* v. *Kosydar* (1975), 44 Ohio St. 2d 199, at 201 [73 O.O.2d 502].

The regulations pertaining to the operation of incinerators promulgated, pursuant to R.C. 3704.03(G), do not impose new duties and obligations upon the operation of the incinerators in the past. The regulations do restrict the operation of the incinerators in the future so that the environment will not be unreasonably polluted. The regulation and statutes pertaining to air pollution control were promulgated under the police power of the state for the benefit of the public health, safety and welfare. The regulations have prospective application only.

Although there were no laws in the past regulating air pollution from incinerators and smoke stacks, new laws based upon the police power of the state may be enacted which restrict, prohibit, or make more expensive operation of these existing sources of pollution. Otherwise existing sources of pollution could not be controlled other than through an inadequate common-law nuisance theory.

Appellants' third assignment of error is overruled.

Ohio Adm. Code 3745-35-05(F) provided as follows:

"(1) Sources of particulate matter of sulfur dioxide, whose emissions are regulated solely by Chapter 3745-17 of the OEPA Regulations and which have a maximum potential yearly emission of less than 25 tons of sulfur dioxide and a maximum potential yearly emission of less than 25 tons of particulate matter, shall not be required to apply for or obtain permits to operate or variances but shall be required to register with the Director. Registration shall be made in a form and manner prescribed by the Ohio EPA and shall contain the same information, affirmation, and signatures required for a substantially approvable application for a permit to operate or a variance."

Appellants attempted to register their incinerators in accordance with Ohio Adm. Code 3745-35-05(F)(1). However, the Commissioner of the Cleveland Division of Air Pollution Control of the EPA notified appellants that their applications were deficient because they did not include information on the quantity of un-

controlled and controlled emissions. He notified them that their applications must be supplemented with the additional necessary information and that failure to so complete the applications would result in their return and treatment as never filed, as provided by Ohio Adm. Code 3745-35-02(B)(9). Appellants submitted no further information and, instead, appealed.

There was a *de novo* hearing before the Environmental Board of Review. The board held that appellants did not prove that their applications for registration status were adequate because their applications did not contain information sufficient to determine whether the incinerators were eligible for registration status.

Appellants contend that the board erred in concluding that the EPA properly rejected their applications. They argue that sufficient information was provided in their applications to show that the incinerators were entitled to registration status.

In order to be entitled to registration status and to be excepted from the general requirement for obtaining a permit to operate or a variance, former Ohio Adm. Code 3745-35-05(F)(1) required that the source of particulate matter or sulfur dioxide emissions must have a maximum potential yearly emission of less than twenty-five tons of sulfur dioxide and less than twenty-five tons of particulate matter.

Additionally, Ohio Adm. Code 3745-35-05 provided, in conjunction with registration of the foregoing sources of air pollutant emissions, that the director may require the source to obtain a permit to operate or a variance to operate if he concluded that the source has violated, is violating, or may violate any air contaminant emission standard or regulation of the EPA. Ohio Adm. Code 3745-35-05 (F)(2). In order to determine whether the source has, is, or may be violating other air contaminant emission standards or

regulations, the director required that the registration form contain the same information required for a substantially approvable application for a permit to operate or a variance.

Appellants do not argue that their applications contained the information that would have been required had they applied for a permit to operate or a variance. They argue that their applications showed that the incinerators each had a maximum potential yearly emission of less than twenty-five tons of sulfur dioxide and less than twenty-five tons of particulate matter, and that information was sufficient to show their entitlement for registration. That contention is not well-taken. The registration rule on its face requires information sufficient for the director to conclude that the source has not, is not, and will not violate air contaminant emission standards in order to be qualified for registration. Had the regulation made an emission source automatically eligible for registration upon the showing that the actual or potential maximum yearly emission was less than twenty-five tons of sulfur dioxide and less than twenty-five tons of particulate matter, no other information would be required and violation of other air contaminant emission standards or regulations would be a matter of enforcement. However, Ohio Adm. Code 3745-35-05(F)(1) does not grant automatic registration to such sources and the director is entitled to have information showing past, present and future compliance with all emission standards before ruling upon an applicant's request for registration. Registration was apparently designed by the director to relieve the operator of a relatively minor source of pollution from the continuing burden of proving a right to a permit or variance, after initially doing so, by thereafter exempting the entity by registration. However, the rule does not provide an automatic initial registration for an emission source merely because its potential max-

imum yearly output was less than twenty-five tons of sulfur dioxide or particulate matter.

Hence, the director did not err in requiring appellants to supply substantially the same information as an applicant for a permit to operate or a variance would have had to supply before ruling upon their eligibilities for registration.

The information which applicants have refused to supply was calculated to provide the director with a factual basis to determine whether applicants have complied with all necessary emission standards or regulations of the EPA; that type of data is included within the term in Ohio Adm. Code 3745-35-05(F)(1), as part of a "substantially approvable application" for a permit to operate or a variance.

The board correctly determined that appellants' registration submittals did not provide sufficient information required for a substantially approvable application for a permit to operate or a variance.

This case is distinguishable from *Roosevelt Apartments* v. *McAvoy* (Dec. 28, 1979), Franklin App. No. 78AP-570, unreported. In the *McAvoy* case, there was an automatic exemption granted if an incinerator was used in an apartment containing six or less units. As pointed out previously, Ohio Adm. Code 3745-35-05(F)(1) did not provide an automatic registration right to an emission source even though its maximum yearly emission was less than twenty-five tons of sulfur dioxide or particulate matter.

Appellants' fourth assignment of error is overruled.

Appellants finally argue that the director of the EPA does not have the right to require the installation of additional equipment, or the requirement that tests be conducted by incinerator operators in order to be entitled to registration pursuant to Ohio Adm. Code 3745-35-05(F)(1).

R.C. 3704.031 provides, as pertinent, as follows:

"Prior to issuance or renewal of a permit or a variance * * * the director * * * may require the applicant to install such equipment and conduct such tests and analyses as the director finds reasonable * * *."

Appellants argue that the director only had the right to require the installation of equipment and the conduct of tests and analysis in the instance of an application for a permit or variance rather than when seeking to obtain registration status. It is true that R.C. 3704.031 does not refer to registration. However, R.C. Chapter 3704 does not specifically grant the director the power to register small sources of pollutants. If there is no power to grant registration status to these types of sources, then the result would be that appellants would have to obtain a permit or a variance to operate their incinerators, which in turn would require installation of equipment and the conduct of such test as the director may find reasonable.

Within the director's discretion, he may allow small sources of pollutants to obtain registration status based upon satisfactory information being furnished to him to indicate that the sources are not violating emission standards or regulations. In order to make that determination, the director may reasonably require substantially the same information required for the allowance of a permit or a variance.

Appellants' fifth assignment of error is overruled.

Appellants' assignments of error are overruled and the decision of the Environmental Board of Review is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and NORRIS, JJ., concur.