ENGINEERING TECHNICIANS ASSOCIATION, INC. et al., Appellants,

v.

OHIO DEPARTMENT OF TRANSPORTATION et al., Appellees.

[Cite as *Eng. Technicians Assn., Inc. v. Ohio Dept. of Transp.* (1991), 72 Ohio App.3d 106.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–703.

Decided Jan. 10, 1991.

*Lucas, Prendergast, Albright, Gibson & Newman, Rankin Gibson* and *James E. Melle,* for appellants.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Lorraine Nestor, Richard A. Szilagyi* and *Ronald H. Snyder,* for appellees.

PEGGY BRYANT, Judge.

Plaintiffs-appellants, Charles C. Cornell, C. Melvin Smith, James R. Williams, and Engineering Technicians Association, Inc. ("ETA"), appeal an order of the Franklin County Common Pleas Court dismissing their claims for declaratory judgment, preliminary and permanent injunctions, and a writ of mandamus for lack of standing.

Cornell, Smith, and Williams are employees of defendant-appellee, Ohio Department of Transportation ("ODOT") and work in its Bureau of Location

and Design, Plan Review Section. None of them has a certificate of registration as a professional engineer pursuant to R.C. 4733.02. Cornell and Smith are members of ETA, a nonprofit corporation that asserts the interests of its members as to matters not covered by a collective bargaining agreement. ODOT posted a notice of vacancy for a non-union Design Engineer 3 position. The qualifications for the job, as listed in the job specifications established by defendant-appellee, Ohio Department of Administrative Services ("ODAS"), included a certificate of registration as a professional engineer. ODAS, at the request of ODOT, had recently modified the qualifications for this job classification. Effectively, ODAS split the former Design Engineer 3 classification into two classifications: the new Design Engineer 3 classification which required an engineering registration, and a Design Specialist 4 classification with similar duties but no registration requirement. A number of other engineer classifications were similarly split. The new Design Engineer 3 classifications were promulgated by rule pursuant to R.C. 124.14(A).

Cornell, Smith, and defendant-appellee, David Devakul, applied for the posted Design Engineer 3 position. Devakul, a registered professional engineer, was ultimately awarded the position; Cornell and Smith were not considered for the position because they were not registered professional engineers.

Plaintiffs brought suit on February 28, 1990, seeking a declaratory judgment that the engineering registration requirement was invalid and that ODOT was required to use a competitive examination to fill the position permanently, a preliminary and permanent injunction seeking to remove Devakul from the position and prevent him from completing his probationary period, and a writ of mandamus to compel ODAS to remove Devakul from the position and administer the competitive examination.

The trial court referred the matter to a referee, who conducted a full evidentiary hearing on the preliminary injunction issue on April 12 and 13, 1990, and issued his report on April 16, 1990. The referee's report, which contained findings of fact and conclusions of law, recommended that all of plaintiffs' claims be dismissed for lack of standing. On May 18, 1990, the trial court entered an order adopting the referee's report and granting defendants' motion to dismiss all of the claims.

Plaintiffs appeal therefrom, assigning the following errors:

"I. The common pleas court erred in dismissing plaintiffs' complaint for lack of standing because appellants had standing to obtain a declaratory judgment, preliminary and permanent injunctions and a writ of mandamus.

"II. The common pleas court erred in upholding the engineering license qualification in the design engineer 3 classification specification and as it was applied as a qualification for the job in question because:

"a. The qualification for this non-bargaining unit job was negotiated between appellees and the union in violation of Article XV Section 10 of the Ohio Constitution and R.C. 4117.08(B) and (C); [and]

"b. The duties and responsibilities of the job and the classifications do not include responsible charge of engineering work, and DAS did not evaluate that job or classification for exemption under R.C. 4733.18(B)(1).

"III. The common pleas court erred in allowing appellee Devakul to remain in the position without ordering a civil service examination because a provisional appointee may only serve in the position for six months during which time a civil service examination must be prepared and administered.

"IV. The common pleas court erred in failing to remove appellee Devakul from his job because he was not entitled to the benefits or protections of the civil service laws because he has not taken a civil service examination."

█ Preliminarily we note that, unlike many of our cases involving job classification disputes, this case does not involve an appeal under R.C. Chapter 119. Thus, we uphold the trial court's findings if they are supported by competent, credible evidence in the record, *Shear v. West American Ins. Co.* (1984), 11 Ohio St.3d 162, 165, 11 OBR 478, 481, 464 N.E.2d 545, 548, rather than the abuse of discretion standard applicable to R.C. Chapter 119 appeals, *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161–162, 11 OBR 242, 244, 463 N.E.2d 1280, 1283.

Plaintiffs' first assignment of error asserts that the common pleas court erred in dismissing their complaint for lack of standing. Plaintiffs argue that they have standing because defendant's classification forecloses promotional opportunities for design specialists who lack an engineering certificate. Defendants respond that plaintiffs have no standing to challenge the lack of a promotional exam and the retention of Devakul as a Design Engineer 3; and that plaintiffs' union grievance procedure provides the sole means by which they may challenge the job classification.

█ An individual plaintiff has standing to sue only if he has a sufficient stake in the outcome of a justiciable controversy. *Racing Guild of Ohio, Local 304 v. Ohio State Racing Comm.* (1986), 28 Ohio St.3d 317, 321, 28 OBR 386, 389, 503 N.E.2d 1025, 1029; *State, ex rel. Consumers League of Ohio, v. Ratchford* (1982), 8 Ohio App.3d 420, 424, 8 OBR 544, 548, 457 N.E.2d 878, 883. The individual plaintiffs have a sufficient stake in the outcome of the controversy if they can demonstrate injury in fact, which requires showing

that they have suffered or will suffer a specific injury as a result of the challenged action and that the court can redress such injury.  *Id.*

██ Plaintiffs allege that they will be denied promotional opportunities as a result of the classification.  Specifically, Cornell and Smith demonstrated that they were not considered for the position now held by Devakul because they are not registered engineers;  and Williams asserts that classifications requiring an engineering certificate limit his opportunities for advancement even though he did not apply for the Design Engineer 3 position now held by Devakul.  Plaintiffs further contend that this injury is likely to be redressed if this court invalidates the Design Engineer 3 classification.  Given the foregoing, plaintiffs have demonstrated injury in fact, not only as to the classification, but also as to the lack of a promotional examination and the retention of Devakul as a Design Engineer 3.  As a result, plaintiffs have a sufficient stake in the controversy to confer standing to challenge the classification.

██ An association has standing only if at least one of its members would otherwise have standing to sue in his own right.  *State, ex rel. Connors, v. Ohio Dept. of Transp.* (1982), 8 Ohio App.3d 44, 47, 8 OBR 47, 50, 455 N.E.2d 1331, 1334.  Cornell and Smith are members of ETA;  each has standing to sue in his own right.  Thus, the association also has standing to assert the interests of its members.

██ ODOT's argument that the dispute resolution procedure established by the collective bargaining agreement provides the sole means for challenging the classification does not alter the standing analysis.  The collective bargaining agreement's dispute resolution mechanism applies only to classifications within the bargaining unit;  thus, it does not preclude plaintiffs from challenging a classification outside the bargaining unit by other means.  Since neither party disputes that the Design Engineer 3 classification is outside the collective bargaining unit, the terms of the collective bargaining agreement do not render the controversy nonjusticiable.

Accordingly, plaintiffs' first assignment of error is well taken.

██ Although the trial court dismissed the entire action for lack of standing, the court nevertheless considered and decided the merits of the action.  By adopting the findings of the referee which upheld the job classification, the court declared the rights of the parties as to the validity of the classification, and this declaration necessarily determined plaintiffs' remaining claims for declaratory and injunctive relief and a writ of mandamus.  Thus, the trial court's dismissal for lack of standing did not prejudice plaintiffs.  Civ.R. 61;  *e.g., Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137, paragraph one of the syllabus;  *McQueen v. Goldey* (1984), 20 Ohio App.3d 41,

44, 20 OBR 44, 47, 484 N.E.2d 712, 716. Accordingly, we overrule the first assignment of error because we find no prejudice to plaintiffs herein; and we review the trial court's declaration of the rights of the parties and denial of plaintiffs' remaining claims.

Plaintiffs' second assignment of error asserts that the common pleas court erred in upholding the engineering registration qualification in the Design Engineer 3 classification. Plaintiffs first dispute the validity of the classification under R.C. 124.14(A), arguing that ODAS cannot require an engineering registration as a qualification for a position in any situation in which the statutory exemption may negate the requirement of a engineering registration; thus, after application of the exemption set forth in R.C. 4733.18(B)(1) [1] to the qualifications of a Design Engineer 3, plaintiffs argue that the classification is invalid because no rational basis exists for a distinction between this classification and a Design Specialist 4. Defendants contend that, while the exception may permit an individual to perform certain engineering work without registration, it does not preclude ODAS from requiring an engineering registration as a job qualification to facilitate recruiting and retention of qualified engineering graduates, and that furtherance of these objectives provides a rational basis for a distinction between the two classifications at issue.

We initially note that a job title does not determine the qualifications required for the job; a person who is not a registered professional engineer may hold a job whose title includes the word "engineer" when the job title is established only for internal state purposes. Thus, the issue disputed by the parties is whether defendants may require registration as a professional engineer as a qualification for a classification, regardless of the title assigned to that classification.

▮ A statute survives an equal protection challenge if, at a minimum, the classification rationally furthers a legitimate government purpose. *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 119, 11 O.O.3d 290, 293, 387 N.E.2d 231, 234; *Roosevelt Apts. v. Nichols* (1983), 10 Ohio App.3d 232, 234, 10 OBR 327, 330, 461 N.E.2d 1324, 1328. Thus, the job classification satisfies equal protection if the registration requirement rationally furthers a legitimate government purpose.

▮ The parties do not dispute that the split job classification scheme provided registered professional engineers with a career path separate from

---

[1]. Application of R.C. 4733.18(B)(1) is primarily relevant in determining which positions fall within the classification of Design Engineer 3 or Design Specialist 4, not in determining the validity of the two classifications.

the one available to other ODOT employees who performed similar duties. Based on the testimony of ODOT personnel, the referee found that the engineering registration requirement was imposed to facilitate recruiting and retention of qualified engineering graduates. Such government purposes are not only legitimate, but specifically sanctioned by R.C. 124.14, which provides that:

"* * * [T]he director shall consider in establishing classifications * * * such factors as * * * special skills in short supply in the labor market, recruitment problems, separation rates, comparative salary rates, the amount of training required, and other conditions affecting employment. * * * "

We cannot say that registration requirement is not rationally related to the above-stated government purposes.

Moreover, the difference in the responsibilities of a Design Engineer 3 and a Design Specialist 4 supports a conclusion that the difference in the qualifications of these classifications is not arbitrary and unreasonable. A Design Engineer 3 acts in the stead of his supervisor when necessary while a Design Specialist 4 does not. The supervisor of the Design Engineer 3 in the Plans Review Section, the "Plans Engineer," is classified as a Project Engineer 5, which requires registration as a professional engineer.

ODOT has a legitimate interest in providing coverage for a supervisor in an efficient manner. The need for a Design Engineer 3 to act in the stead of his supervisor may be unexpected or of short duration, rendering it impractical for ODOT to conduct a case-by-case determination of the qualifications of subordinates to act in the supervisor's stead. Such a Design Engineer 3 is required to have the same professional engineer registration as his or her supervisor. A Design Engineer 3 can act in the stead of the supervisor without inquiry into either the subordinate's qualifications or whether the work involves the responsible practice of engineering. We cannot say that this registration requirement does not rationally further a legitimate government interest.

█ Plaintiffs further argue that the classification is invalid because it was negotiated with the bargaining unit, even though the classification is outside any bargaining unit; thus, plaintiffs assert the negotiated classification violates Section 10, Article XV of the Ohio Constitution, and R.C. 4117.08(B), which require that civil service appointments be based on merit and fitness rather than the result of collective bargaining. Defendants originally stated that the classification was negotiated with the bargaining unit, but later noted it was not subject to collective bargaining; and that only the related specialist classification was negotiated with the bargaining unit.

Defendants' contact with the bargaining unit appears to be an exchange of information in furtherance of good labor-management relations rather than improper bargaining as to a classification outside the bargaining unit. Moreover, plaintiffs have established no violation of either Section 10, Article XV of the Ohio Constitution or R.C. 4117.08(B). Section 10, Article XV requires that state civil service appointments and promotions be based on merit and fitness as far as practicable, while R.C. 4117.08(B) provides that neither the conduct and grading of civil service examinations nor the establishment of lists of eligible candidates and original appointments therefrom are appropriate subjects for collective bargaining. Neither provision applies to defendants' negotiations with a bargaining unit as to the qualifications for a classification outside the bargaining unit and the effect of changes in such qualifications within the bargaining unit.

Because we conclude that the classification does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, R.C. 4117.08(B), or Section 10, Article XV of the Ohio Constitution, we overrule plaintiffs' second assignment of error.

We address plaintiffs' third and fourth assignments of error together inasmuch as they are related. Plaintiffs assert that the common pleas court erred in allowing Devakul to remain in the Design Engineer 3 position for more than six months because ODAS failed to create and administer a promotional examination within his probationary period; thus, plaintiffs contend that Devakul should be removed from the position because his provisional appointment has expired and he has not taken a promotional examination that entitles him to remain in the position as a regular appointee. Defendants argue that ODAS is not obligated to administer such an examination because examinations are required only when practicable and provisions in the Revised Code allow for promotions without competitive examinations.

In *Stauffer v. Ohio Dept. of Transp.* (1989), 63 Ohio App.3d 248, 578 N.E.2d 542, this court held that R.C. 124.31(A) requires promotions to be based on examinations "as far as practicable" but imposes no mandatory duty on ODAS to provide written competitive examinations for each position within the classified service. Plaintiffs seek to distinguish *Stauffer*, contending that R.C. 124.30(A), rather than R.C. 124.31(A), applies to this case. We disagree. R.C. 124.30(A) concerns examinations that are open to the public at large for original appointment to the classified service. *State, ex rel. Schmidt v. Harter* (1932), 43 Ohio App. 503, 506, 183 N.E. 389, 390.

■ Moreover, even if the common pleas court erred in deciding these issues, plaintiffs were not harmed by the failure of ODAS to administer a competitive examination or remove Devakul from the Design Engineer 3

position; because plaintiffs were not registered professional engineers, they did not meet the minimum qualifications necessary to take the examination, Ohio Adm.Code Sections 123:1–7–04 and 123:1–23–6, or fill the Design Engineer 3 position. Thus, any such error is harmless and does not warrant reversal. Civ.R. 61; *e.g., Smith, supra; McQueen, supra.*

Accordingly, we overrule plaintiffs' third and fourth assignments of error.

Having overruled all assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

WHITESIDE and GRIGSBY, JJ., concur.

JOSEPH B. GRIGSBY, J., of the Union County Court of Common Pleas, sitting by assignment.