OPINION
Defendant-Appellant, Carey Yirga ("Yirga"), appeals from a judgment of conviction and sentence entered by the Wyandot County Common Pleas Court finding her guilty of one count of involuntary manslaughter, a first degree felony in violation of R.C. 2903.04(A), and two counts of tampering with evidence, third degree felonies in violation of 2921.12(A)(1). Yirga now asserts that the sentence imposed is unsupported by the record and contrary to law, challenges the forfeiture of guns used in her crimes, and argues that the imposition of a period of solitary confinement on the date of the anniversary of her offenses violates due process. Having reviewed the entirety of the record herein, we find that the trial court properly complied with the sentencing guidelines set forth in R.C. Chapter 2929 in its sentence. Furthermore, Yirga lacks standing to challenge the forfeiture because she is not entitled to a possessory interest in the firearms and cannot obtain standing on the basis of her father's loss. However, because applicable sentencing provisions do not authorize or provide for any period of solitary confinement, the solitary confinement provision was contrary to law. Accordingly, we must vacate the trial court's sentencing judgment insofar as it mandates the imposition of solitary confinement.
Procedural history and facts relevant to issues raised on appeal are as follows. On May 12, 2000, Yirga telephoned 9-1-1, reporting that she had been shot in the hand by her boyfriend, Chad Manns, at her parents' residence and that he had been shot when she attempted to take the weapon from him. When questioned by a responding officer, she indicated that she and the victim had been fighting in recent days, and in an argument that morning, he had told her she was unattractive and that he intended to leave her for a former girlfriend. Yirga claimed that, after he had packed and removed nearly all of his belongings, Manns retrieved an AMT .380 caliber handgun from a bedroom and drew the weapon on her as they smoked cigarettes and attempted to calm themselves on an exterior porch. She asserted that she had been shot when she attempted to grab the weapon and that she was "somehow" able to get the gun, indicating she had been trained to disarm a person from a Police and Society course she had taken. She stated that, once in possession of the firearm, she freaked out, pointed the gun at him, and kept shooting, insisting that she did not know what he was going to do.
While examining the crime scene, investigators located .22 caliber projectiles on the floor of the kitchen, in the living room, and in Yirga's bedroom. A subsequent autopsy indicated that Manns suffered four gunshot wounds, including a wound to his right wrist, his back, his shoulder, and his head. All wounds showed signs of entry from a posterior position, an indication that his back was turned when the shots were fired. Further investigation revealed that the .22 caliber handgun inflicted Yirga's hand wound. During several interviews, Yirga gave conflicting statements about the events leading up to and after the incident, subsequently admitting that she had antagonized Manns into continued confrontation and shot herself in the hand with the .22 after the alleged altercation, thereafter returning the gun to its place of storage. Although she could not explain why he would want to harm her before leaving to continue his relationship with a former girlfriend, Yirga maintained that Manns produced the gun and then she took the weapon from him and shot him with it.
On September 13, 2001, the Wyandot County Grand Jury returned an indictment against Yirga for one count of aggravated murder and two counts of tampering with evidence. Although each count originally carried a firearm specification, the specification was subsequently dismissed as to each tampering with evidence offense. Pursuant to a negotiated plea agreement, the aggravated murder count was amended to an involuntary manslaughter charge with a firearm specification in return a plea of guilt to the manslaughter and the tampering with evidence offenses. Following an animus hearing, the trial court determined that the underlying acts of the tampering with evidence charges constituted a singular course of conduct and intent, concluding that Yirga could be sentenced for only a single tampering-with-evidence violation.
At a November 28, 2001 sentencing hearing, the trial court accepted Yirga's guilty plea, she and her counsel were provided the opportunity to address the court and present evidence on her behalf, and several statements were received on behalf of the defendant's and victim's families. After considering the circumstances of the case and evidence presented, the trial court sentenced Yirga to a ten-year period of imprisonment for the manslaughter charge, with an additional mandatory three-year consecutive term for the firearm specification, and a five-year period of imprisonment for the tampering with evidence charge, ordering that the sentences be served consecutively. In addition, the court imposed a $10,000 fine for the manslaughter offense, ordered that the AMT .380 caliber handgun and .22 caliber handgun used in the offenses be forfeited to the Wyandot County Sheriff's Office, and ordered that she pay restitution to the victim's family in the amount of $8,560 and fees and costs of prosecution. The instant appeal followed, with Yirga presenting three assignments of error for our consideration:
 Assignment of Error Number One
"The trial court's finding that each count merited the maximum sentence and that same be served consecutively is not supported by the record and contrary to law."
The structure of Ohio felony sentencing law provides that the trial court's statutory findings determine the sentence imposed.[1] A trial court must be in strict compliance with the relevant sentencing statutes by making all necessary findings on the record at the hearing on sentencing.[2] A sentencing court need not, however, recite the exact words of the statute in a talismanic ritual so long as the record clearly indicates that the court considered applicable sentencing guidelines and set forth appropriate findings and reasons in support of its determination.[3]
R.C. 2953.08(G)(2) authorizes appellate courts to increase, reduce, or otherwise modify or vacate a sentence and remand the matter to the trial court for re-sentencing if the court finds by clear and convincing evidence:
 "`(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13; division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 "`(b) That the sentence is otherwise contrary to law."
Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.[4]
In reviewing trial court decisions founded upon this degree of proof, an appellate court must examine the record to determine whether the evidence satisfies the clear and convincing standard.[5] However, an appellate court should not simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims."[6]
A felony of the first degree warrants a definite prison term of three, four, five, six, seven, eight, nine, or ten years[7] and it is presumed that a prison term is necessary to comply with the purposes and principles of sentencing under R.C. 2929.11.[8] For third degree felonies, a sentencing court is permitted to impose a definite prison term of one, two, three, four, or five years.[9] R.C 2929.13(C) also requires that "in determining whether to impose a prison term as a sanction for a felony of the third degree * * * the sentencing court shall comply with the purposes and principles of sentencing under section2929.11 of the Revised Code and with section 2929.12 of the Revised Code." According to R.C. 2929.11, the overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender. When sentencing an offender, the trial court is granted broad discretion in determining the most effective way to uphold these objectives.[10] R.C. 2929.12 enumerates a nonexclusive list of seriousness and recidivism factors that sentencing courts must consider. Courts are also permitted to contemplate any other circumstances or factors that are relevant to achieving the purposes and principles of sentencing[11] and are provided significant discretion in determining the weight to be assigned to these and other statutory factors.[12]
Where, as here, a prison term is imposed upon an offender for a felony and the offender has not previously served a prison term, R.C. 2929.14(B) directs the court to impose the shortest term unless it finds on the record that "the shortest term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." If the court makes this preliminary finding, it may then properly impose the maximum term upon concluding, among other things, that the offender committed one of the worst forms of the crime or that the offender poses the greatest likelihood of committing future crimes.[13]
A trial court must also make specific findings prior to sentencing a defendant to consecutive sentences. R.C. 2929.14(E) states, in pertinent part:
 "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Additionally, the trial court must comply with R.C. 2929.19(B)(2)(c), (d) and (e), which state:
 "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 "* * *
 "(a) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences.
 "(b) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term;
 "(c) If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."[14]
In State v. Edmonson,[15] the Ohio Supreme Court articulated the difference between making a finding on the record and giving reasons for imposing a certain sentence. The Court indicated that "finds on the record" merely means that a trial court must specify which statutorily sanctioned grounds it has relied upon in deciding to impose a particular sentence.[16] When a statute further requires the court to provide its reasons for imposing a sentence, as in the case of a maximum term or consecutive sentences, the court must make the applicable findings and then provide a factual explanation setting forth the basis for those findings.[17] Failure to sufficiently state these reasons on the record constitutes reversible error, requiring remand of the matter for resentencing.[18]
Reviewing the seriousness and recidivism factors and having considered the record, circumstances surrounding the offenses, oral statements, victim impact statements, and presentence investigation report, the trial court found that the victim of the offense suffered serious physical harm resulting in his death, that Yirga's relationship with the victim had facilitated the offense, that the victim's family had suffered a great personal loss, and that, as indicated by the presentence investigation report, her statements did not reflect regret for the victim's death or the loss incurred by his family. The court concluded that Yirga was not amenable to community control sanctions, that imprisonment was consistent with the principles and purposes of sentencing as set forth in R.C.2929.11, and that the shortest prison term would demean the seriousness of the offense.
Additionally, the court found that Yirga had committed one of the worst forms of the offenses. With regard to the manslaughter charge, the court denoted the fact that she had lied, provided conflicting accounts of the underlying events, attempted to portray the victim as the aggressor, admitted antagonizing the victim, shot the victim as he turned away, had time to reflect on her actions before inflicting the fatal wounds, and delayed seeking medical assistance for the victim while concocting her story, thereby precluding any possible chance for his survival. With regard to the tampering with evidence charge, the court indicated that this was not just a case of merely hiding or moving a piece of evidence, but an entire series of events executed in an attempt to construct a false crime scene, mislead investigators, and cast suspicion away from her. The court further noted that she was a criminal justice student who should have appreciated the import of her actions and had gone so far as to shoot herself in the hand in her attempt to manipulate the crime scene.
In ordering consecutive sentences, the court determined that consecutive service was necessary for adequate punishment, was not disproportionate to the criminal conduct and the danger the defendant posed to the public, and that the harm caused by the offenses was so great that a single term would not reflect the seriousness of the conduct. The court set forth factual explanations supporting these findings, indicating that this was a killing with minimal remorse and significant deceit by a defendant who, despite advantages, other options, and the fact that she was neither isolated nor trapped, had justified in her mind the killing of another and minimized her behavior.
Having reviewed the entirety of the record herein, we find that the trial court properly complied with the sentencing guidelines set forth in R.C. Chapter 2929 in imposing maximum consecutive sentences for the first degree involuntary manslaughter offense and third degree tampering with evidence offense: the court's analysis illustrates that it fulfilled its obligation to consider appropriate sentencing guidelines, the record supports the court's determinations, and the sentence is not otherwise contrary to law. Accordingly, Yirga's first assignment of error is overruled.
 Assignment of Error Number Two "The trial court erred when it ordered the forfeiture to the Wyandot County Sheriff's Office of the AMT .380 caliber handgun and the .22 caliber handgun model 9472."
 For her second assignment of error, Yirga avers that the trial court erred in ordering forfeiture of the handguns used in the underlying offenses, arguing that the State did not follow procedural prerequisites in requesting the forfeiture and that the statute is inapplicable to her father, the owner of the firearms.
As mentioned previously, the trial court ordered that the AMT .380 caliber handgun and .22 caliber handgun used in the offenses be forfeited to the Wyandot County Sheriff's Office. On December 24, 2001, Yirga and her father submitted a motion requesting the return of the handguns. By entry dated January 15, 2002, the trial court deferred the matter pending the outcome of the instant appeal.
R.C. 2933.41(A)(1) provides that "[a]ny property * * * that has been * * * lawfully seized or forfeited * * * shall be disposed of pursuant to this section." R.C. 2933.41(C) provides:
 "(C) A person loses any right that the person may have to the possession, or the possession and ownership, of property if any of the following applies:
"(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense.
"(2) A court determines that the property should be forfeited because, in light of the nature of the property or the circumstances of the person, it is unlawful for the person to acquire or possess the property."
Because Yirga used the handguns in committing the subject offenses, she forfeited any right to possess or own the firearms. Yirga does not, however, attempt to argue that the trial court improperly divested her of an interest in the firearms; instead, she asserts that the statute is inapplicable to her father and that the handguns should be returned to him.
To establish standing, a party must demonstrate an injury in fact, which requires a showing that the party has suffered or will suffer a specific injury traceable to the challenged action and that this injury is likely to be redressed if the court invalidates the action or inaction.[19] R.C. 2933.41 permits the return of confiscated evidence only to those persons who can demonstrate that they have a right of possession.[20] Because Yirga is not entitled to and does not argue that she is entitled to possession of the firearm, she has no injury that is likely to be redressed if the court invalidates the action or inaction. Moreover, it is axiomatic, as a prudential standing limitation, that a party is limited to asserting his or her own legal rights and interests, and not those of a third party.[21] To bring an action on behalf of a third-party, a litigant must satisfy three criteria: first, the litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; second, the litigant must have a close relation to the third party; and third, there must exist some hindrance to the third party's ability to protect his or her own interest.[22]
Because Yirga has not demonstrated that she has suffered an injury in fact or that there exists some hindrance to her father's ability to protect his interest in the handguns, she lacks standing to contest the forfeiture.[23]
Accordingly, Yirga's second assignment of error is overruled.
 Assignment of Error Number Three
"The trial court denied Defendant due process of law guaranteed by theFifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when it ordered [her] to be placed in solitary confinement on the anniversary date of the offenses."
In sentencing Yirga, the trial court ordered that "if the institution in which Defendant is incarcerated has the ability to do so, the Defendant shall be placed in solitary confinement on May 12th of each and every year of her prison term, not as additional punishment, but to provide the Defendant with a quiet and solitary period of time in which to reflect upon her conduct." Yirga argues that she was denied due process because solitary confinement is not a punishment provided for by law. The State concedes that the trial court erred and we agree.
A trial court may only impose a sentence provided for by law.[24]
The authority to define and fix punishment for a crime belongs indisputably to the legislature, and the discretionary power of judges to sentence is circumscribed by the legislature.[25] Sentencing provisions applicable to the instant case do not authorize or provide for any period of solitary confinement. Therefore, despite the trial court's attempt to characterize the nature or purpose of the sanction as a moment of quiet reflection, the solitary confinement provision was contrary to law.[26] Accordingly, Yirga's third assignment of error is sustained and the solitary confinement provision is hereby vacated.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of sentencing is vacated insofar as it mandates the imposition of solitary confinement, and the cause is remanded to the Common Pleas Court of Wyandot County for resentencing consistent with this decision.
Judgment affirmed in part, vacated in part and cause remanded.
SHAW, P.J., and BRYANT, J., concur.
[1] State v. Martin (1999), 136 Ohio App.3d 355, 362,736 N.E.2d 907.
[2] Id.; State v. Williams (2000), 136 Ohio App.3d 570, 572,737 N.E.2d 139.
[3] State v. Mitchell (March 28, 2002), Crawford App. No. 3-01-20, 2002-Ohio-1400, at ¶ 9 (citations omitted).
[4] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, citing Cross v. Ledford (1954), 161 Ohio St. 469, 53 O.O. 361,120 N.E.2d 118.
[5] Id.
[6] State v. Jones (2001), 93 Ohio St.3d 391, 400, 2001-Ohio-1341,754 N.E.2d 1252.
[7] R.C. 2929.14(A)(1).
[8] R.C. 2929.13(D).
[9] R.C. 2929.14(A)(3).
[10] R.C. 2929.12(A); State v. Fyffe (Oct. 5, 2001), Auglaize App. No. 2-01-16; State v. Avery (1998), 126 Ohio App.3d 36, 50-51,709 N.E.2d 875.
[11] See R.C. 2929.12(A), (B), (C), (D), and (E).
[12] State v. Arnett (2000), 88 Ohio St.3d 208, 215, 2000-Ohio-302,724 N.E.2d 793, citing State v. Fox (1994), 69 Ohio St.3d 183, 193,631 N.E.2d 124; State v. Mills (1992), 62 Ohio St.3d 357, 376,582 N.E.2d 972. See, also Avery, 126 Ohio App.3d at 50.
[13] See R.C. 2929.14(C).
[14] Emphasis added.
[15] State v. Edmonson (1999), 86 Ohio St.3d 324, 1999-Ohio-110,714 N.E.2d 131.
[16] Id. at 326.
[17] Id. See, also Jones, 93 Ohio St.3d at 399.
[18] State v. Gary (2001), 141 Ohio App.3d 194, 196, 750 N.E.2d 640;State v. Martin (2000), 140 Ohio App.3d 326, 334, 747 N.E.2d 318.
[19] In re Estate of York (1999), 133 Ohio App.3d 234, 241,727 N.E.2d 607, citing Eng. Technicians Assn. v. Ohio Dept. of Transp. (1991), 72 Ohio App.3d 106, 110-11, 593 N.E.2d 472; Franklin Cty.Regional Solid Waste Mgt. Auth. v. Schregardus (1992), 84 Ohio App.3d 591,599, 617 N.E.2d 761.
[20] In re Disposition of Property Held by Geauga Cty. Sheriff
(1998), 129 Ohio App.3d 676, 681-682, 718 N.E.2d 990; Eastlake v.Lorenzo (1992), 82 Ohio App.3d 740, 743, 613 N.E.2d 247.
[21] Warth v. Seldin (1975), 422 U.S. 490, 499, 95 S.Ct. 2197,2205, 45 L.Ed.2d 343, 355.
[22] Powers v. Ohio (1991), 499 U.S. 400, 411, 111 S.Ct. 1364,113 L.Ed.2d 411 (citations omitted).
[23] See, City of Cuyahoga Falls v. Forrester (Sept. 28, 1995), Summit App. No. 17038.
[24] State v. Bilder (1987), 39 Ohio App.3d 135, 529 N.E.2d 1292.
[25] State v. Hughes (Jan. 21, 1999), Cuyahoga App. No. 73279, dismissed, appeal not allowed by 85 Ohio St.3d 1486, 1487, 709 N.E.2d 1214, citing Cleveland v. Scott (1983), 8 Ohio App.3d 358, 457 N.E.2d 351.
[26] State v. Bruno (Feb. 8, 2001), Cuyahoga App. No. CR-375467A, dismissed, appeal not allowed by 93 Ohio St.3d 1411, 754 N.E.2d 259;Hughes, supra; State v. Eberling (Apr. 9, 1992), Cuyahoga App. No. 58559.