THE STATE, EX REL. CONSUMERS LEAGUE OF OHIO ET AL., *v.* RATCHFORD, SUPT., ET AL.

(No. 82AP-119—Decided December 30, 1982.)

*Ms. Carolyn L. Carter, Ms. Marcia Brehmer* and *Mr. David Cleveland,* for relators.

*Mr. William J. Brown,* attorney general, *Mr. Roger P. Sugarman, Mr. Thomas W. Hess* and *Mr. Timothy R. Parry,* for respondents.

NORRIS, J. According to stipulated facts, relator, Consumers League of Ohio, is a voluntary membership association, many of whose members have in the past and will likely in the future purchase credit life insurance. Relator, Donald Zahnke, has purchased credit life insurance in the past and expects to do so in the future. Relators demanded in writing of respondents that they require insurers to reduce credit life insurance premiums rates or show cause why their rates should not be reduced. If premium rates for credit life insurance had been reduced to effect a fifty percent loss ratio for 1977 through 1979, Ohio consumers could have purchased the same amount of credit life insurance at a savings of $71,438,000, or an average of $23,812,667 per year.

Relators seek a writ of mandamus ordering respondents to require those credit life insurance companies which have paid less than fifty percent of premiums in benefits, to make appropriate rate reductions or show cause why their premium rates should not be reduced. Respondents filed a motion to dismiss the complaint on the ground that relators have failed to state a claim upon which relief may be granted.

Respondents also filed a motion seeking leave to file supplemental exhibits consisting of an affidavit and letter from an actuary. The motion is overruled. The affidavit and letter do not meet standards for admissible evidence and do not conform to Section 7 of our Local R. 11. Even were the exhibits admitted into evidence, their contents would not be critical to our decision.

In order to grant a writ of mandamus, we must find that relators have a clear legal right to the relief prayed for, that respondents are under a clear legal duty to perform the requested act, and that relators have no plain and adequate remedy at law. *State, ex rel. Montrie Nursing Home,* v. *Aggrey* (1980), 63 Ohio St. 2d 121, at 126 [17 O.O.3d 74]. The most perplexing issue to be addressed in this case is whether respondents are under a clear legal duty to perform the requested official act. Central to our consideration of that issue are provisions of R.C. 3918.07 and Ohio Adm. Code 3901-1-14:

R.C. 3918.07:

"(A) All policies * * * of insurance * * * shall be filed with the superintendent of insurance.

"(B) The superintendant shall within thirty days after the filing of any such policies * * * disapprove any such form if the table of premium rates charged or to be charged appears by reasonable assumptions to be excessive in relation to benefits * * * or are contrary to any provision of the insurance laws of Ohio or of any rule or regulation promulgated thereunder.

"* * *

"(D) The superintendent may, at any time after a hearing held not less than twenty days after written notice to the insurer withdraw his approval of any such form on any ground set forth in division (B) of this section. The written notice of such hearing shall state the reasons for the proposed withdrawal."

Ohio Adm. Code 3901-1-14:

"3901-1-14 Credit life and credit accident and health insurance

"(A) Applicability

"This regulation is issued pursuant to Chapter 3918 of the Ohio Revised Code regulating credit life insurance and credit accident and health insurance and is applicable to all policies * * * of insurance * * * providing credit life insurance and credit accident and health insurance * * *.

"(B) Filing and Approval, Disclosure

"(1) * * * [I]n order to discharge his duties and exercise his powers under Sections 3918.07 * * * the Director of Insurance adopts this regulation.

"(2) No * * * policy of credit life insurance or credit accident and health insurance shall be issued * * * unless such forms and the premium rates * * * therefor have been filed with the Director and approved by him prior to such issuance or use and have not been subsequently disapproved in accordance with paragraph (B) of Section 3918.07.

"* * *

"(C) Premium Rate and Coverage Standards

"(1) As a guide to insurers in preparing filings for credit life insurance and credit accident and health insurance on the term plan, certain premium rate standards are set forth below. Where rate filings are made in accordance with such premium rate standards, they shall prima facie be deemed not to be excessive in relation to the benefits provided.

"(2) Standards for Premium Rates for Credit Life Insurance

"(a) Monthly Premium Rate

"It is presumed that the premium rate for credit life insurance, for which premiums are paid monthly on outstanding balances, is not excessive in relation to the benefits provided if the monthly premium rate for such coverage does not exceed $1.00 per $1,000 of outstanding balance of insured indebtedness.

"(b) Prima Facie Single Premium Rate for Decreasing Term Credit Life Insurance

"It is presumed that the single premium rate for decreasing term credit life insurance for which premiums are paid in one sum for the entire duration of indebtedness, is not excessive in relation to the benefits provided if the single premium rate for such insurance does not exceed a rate of $.65 per $100 * * *.

"* * *

"(7) Required Downward Rate Deviations

"Any insurer which produces, for a case or class of business, a credible loss ratio of less than 50% shall be required to make appropriate rate reductions or show cause why its premium rates for such case or class of business should not be reduced. * * *

"(8) Credit Accident and Health

"Premium rate deviations for credit accident and health insurance shall be subject to the standards set forth above for credit life insurance, taking into account differing rates for various loan durations for each plan of benefits. * * *"

It is well-settled that an agency is required to follow its own regulations. See *Kroger Grocery & Baking Co.* v. *Glander* (1948), 149 Ohio St. 120, at 126 [37 O.O. 120]; *Lawrence* v. *Leach* (1964), 120 Ohio App. 411, at 414; *State, ex rel. Cincinnati,* v. *Ohio Civil Rights Comm.* (1981), 2 Ohio App. 3d 287.

Among the facts stipulated by the parties are those which clearly establish that insurers, in writing credit life insurance, are producing a loss ratio of less than fifty percent. Respondents argue that the loss ratio exceeds fifty percent when premium rates for both credit life insurance and credit accident and health insurance are aggregated together as a single "class of business" and that, therefore, the superintendent is under no duty to act under Ohio Adm. Code 3901-1-14(C)(7). This argument is demonstratively captious when the language of the regulation and of stipulated evidence is considered — credit life insurance and credit accident and health insurance are clearly treated as separate and distinct classes of business.

A reading of the quoted portions of

R.C. 3918.07 reveals the clear intent of the General Assembly to impose upon the superintendent the responsibility of regulating insurance premiums, and, as a part of that responsibility, to disapprove or reduce premiums which are excessive in relation to benefits. Pursuant to the responsibility thrust upon him by the statute, the superintendent promulgated Ohio Adm. Code 3901-1-14.

The regulation sets out, in subdivisions (C)(1) and (C)(7), two guideposts against which premium rates for credit life insurance will be measured to determine if the premium rates are excessive in relation to the benefits provided. The standard of subdivision (C)(1) clearly applies when companies file policies for approval, and guides the superintendent's determination under R.C. 3918.07(B). Subdivision (C)(7) of the regulation will also apply to initial filings if the production information is available at that time; that information might not be available until some experience is had with premium rates initially deemed not excessive under subdivision (C)(1) of the regulation. However, if experience provides information that would indicate a violation of subdivision (C)(7), then the prima facie standard of subdivision (C)(1) may be overcome and premium rates reduced, or approval withdrawn pursuant to R.C. 3918.07(D). The mandatory nature of the duty imposed upon the superintendent by subdivision (C)(7) of the regulation is clear from the use of the words "[r]equired" and "shall be required."

The duty of the superintendent under Ohio Adm. Code 3901-1-14(C)(7) is not to automatically reduce premium rates when the fifty percent standard is violated, but, rather, to exercise his sound discretion in choosing one of the two alternatives given him — to either make appropriate rate reductions, or to require the company to show cause why its premium rates should not be reduced. In other words, the superintendent has a clear legal duty to exercise his discretion on a case-by-case basis with each insurer whose premium rates produce a credible loss ratio of less than fifty percent. The exercise of his discretion includes selecting "appropriate rate reductions" and determining if the company has shown cause why its premium rates should not be reduced.

Because the regulation was promulgated by the superintendent in order to discharge the duties placed with him by the General Assembly when it enacted R.C. 3918.07, the regulation must be read in conjunction with the statute. We conclude that R.C. 3918.07(B) imposes a mandatory legal duty upon the superintendent to disapprove a policy of credit life insurance within thirty days of its filing, if its premium rates violate the standards of either subdivisions (C)(1) or (C)(7) of the regulation. In addition, where a policy's premium rates are deemed prima facie reasonable under subdivision (C)(1) of the regulation at the time of filing, if experience later proves a violation of subdivision (C)(7) of the regulation, then the regulation imposes a mandatory legal duty upon the superintendent to exercise the discretion granted him by that subdivision of the regulation, and by R.C. 3918.07(D), to proceed against the company.

We conclude that respondents are under a clear legal duty to perform the requested act.

We turn next to consideration of whether relators have a plain and adequate remedy at law. Respondents contend that relators have such a remedy in view of Zahnke having participated in another county in bringing a lawsuit against the seller of credit life insurance. That action may not provide the relief sought against respondents in this case, and so, in that context, relators may not have a plain and adequate remedy at law. However, we need not decide that question since it becomes relevant in a mandamus action brought in this court only in the event the relator has standing to bring

such an action, and, as discussed below, we conclude that relators do not have standing.

Determining whether relators have a clear legal right to the relief prayed for includes a determination of whether these relators are proper parties to bring this action.

"Mandamus will lie to permit a private individual to compel a public officer to perform an official act, where such officer is under a clear legal duty to do so, and where the relator has an interest, such as that of a taxpayer, or he is being denied a private right or benefit by reason of such public officer's failure to take action to perform that act which he is under a clear legal duty to perform." (*State, ex rel. Pressley,* v. *Indus. Comm.* [1967], 11 Ohio St. 2d 141 [4 O.O.2d 141], paragraph nine of the syllabus.)

The common-law doctrine of standing to sue involves a determination of whether a party has a sufficient stake in the outcome of a justiciable controversy to obtain a judicial resolution of that controversy. The Consumers League would have standing if its members would otherwise have standing to sue in their own right. See *State, ex rel. Connors,* v. *Ohio Dept. of Transp.* (1982), 8 Ohio App. 3d 44.

The interest alleged by Zahnke is that he has purchased credit life insurance in the past and expects to do so in the future. By such an allegation he infers that he has suffered some economic injury as the result of respondents' inaction, and that, if the inaction continues, he will suffer economic injury in the future if he again purchases credit life insurance. He does not seek to have any overpayment of premiums refunded, nor does he allege that granting the relief sought will lower his premiums in the future.

We do not believe Zahnke has demonstrated a sufficient interest or stake in the outcome of this controversy. Standing requires demonstration of a concrete injury in fact, rather than an abstract or suspected injury. Demonstration of injury in fact is limited to those situations where an individual can show he has suffered or will suffer a specific injury, even if slight, from the challenged action or inaction, and that this injury is likely to be redressed if the court invalidates the action or inaction.

Because relators have failed to meet this standard of demonstrating their required interest to bring this action, they lack standing to do so, and respondents' motion to dismiss is granted.

*Motion to dismiss sustained.*

WHITESIDE, P.J., and STEPHENSON, J., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.