OPINION
On September 28, 1998, the Geauga County Department of Human Services ("GCDHS") filed a complaint, in the Geauga County Court of Common Pleas, Juvenile Division, alleging that: R.S. had been sexually abused by appellant, her stepfather J.C.; that R.S. was an abused and dependent child; and, that her brother, A.S., and half-brother, B.C., who is the son of appellant and R.S.'s mother, L.C., were dependent children. On October 1, 1998, the trial court ordered that the GCDHS would have protective custody of the children and that appellant must vacate the residence and have no contact with the children, pending further orders. On October 8, 1998, the trial court ordered that R.S.'s natural father would have temporary custody of her during the proceedings.
The trial court held a hearing on November 12 and 13, 1998. Appellant was present at the hearing and represented by counsel. At the hearing, R.S. testified that appellant began sexually abusing her when she was eight or nine years old. At that time, R.S. lived in Claridon, Ohio with her mother, her brothers, and appellant. According to R.S., appellant began touching her chest over the top of her clothes, but later would touch her chest and vagina under her clothes. This would usually occur in her bedroom or in the family's living room while her mom was at work. Appellant denied that he ever touched R.S. in this way.
R.S. testified that, on one occasion, her mother L.C. came into her room while appellant was rubbing her chest. L.C. asked what was going on and R.S. told her that appellant was touching her and had been abusing her for a long time. In response, L.C. hit appellant and told him to get out of the room. The family then had a meeting where L.C. established a rule that appellant and R.S. were no longer allowed to hug, kiss, or be in the same room alone together. Appellant testified that he was kissing R.S. goodnight and that L.C. misread the situation. L.C. testified that she no longer believed that appellant had sexually abused R.S. and had overreacted at the time because she had recently learned that R.S. may have been abused by her step-grandfather. Appellant and L.C. also testified that they believed that R.S. fabricated the story because she was in danger of being held back in school and forced to repeat the fifth grade.
R.S. testified that, after the incident in her bedroom, the touching stopped until after the family moved to Chardon, Ohio in December 1997. After the move, appellant began touching her again and, on numerous occasions, made her rub his penis until he ejaculated. These incidents would occur, in the living room, while L.C. was at work, her younger brother was in the same room watching television, and her older brother was in his room. She further testified that appellant choked her on two occasions and threatened to kill her if she ever told anyone about the abuse. She claimed that on one occasion her older brother walked out of his room and saw her touching appellant. He denied ever observing such conduct and testified that he did not believe his sister.
R.S. did not tell her mom about the abuse until September 1998. During an argument between R.S. and L.C., appellant, who was feeling sick and lying on the couch, got tired of the arguing and threatened to "spank [R.S.'s] ass" if she did not stop. R.S. responded that if he spanked her it would be the last time he ever touched her. L.C. asked R.S. what she meant and R.S. told her that appellant had been touching her again. Appellant denied touching R.S. L.C. believed appellant rather than R.S. L.C. and appellant testified that R.S. lied frequently and that they believed she was lying about the abuse in retaliation because they did not allow her to go to a football game.
On September 25, 1998, R.S. went from school to her friend Kelly's house, rather than going home. She told Kelly and her parents that her stepfather had sexually abused her. Kelly's mother called the police. Detective Tevepaugh, of the Geauga County Prosecutor's Office, and Meredith Meyers, a case worker for GCDHS, investigated the allegations. They interviewed R.S. and her parents and had R.S. undergo counseling. There was no physical examination of R.S. nor was any physical evidence ever collected from the house.
At the immediate conclusion of the two-day hearing, the trial court orally pronounced that it found by clear and convincing evidence that R.S. had been abused and that A.S. and B.C. were dependent children. It noted that it was a difficult case to decide because it rested on appellant's word against R.S.'s and stressed that the complaint was about an allegation that the children were abused and neglected, not a criminal case against appellant. The court instructed the attorney for GCDHS to prepare an entry consistent with its pronouncement.
On December 16, 1998, the trial court issued a judgment entry where it ordered that:
1) R.S. would remain in the custody of her natural father;
 2) GCDHS would exercise protective supervision of the children; and,
 3) The GCDHS would submit a case plan that would require appellant to undergo sexual offender counseling.
Appellant raises the following assignments of error for our review:
 "[1.] The trial court erred to the prejudice of appellant, [J.C.], when it found by clear and convincing evidence that the Geauga County Department of Human Services complaint alleging that his thirteen year old daughter was sexually abused by him was true.
 "[2.] The cumulative effect of errors by the trial court was prejudicial to appellant [J.C.] and deprived him of his constitutional right to a fair trial even though each of the numerous instances of trial court error did not individually constitute cause for reversal."
We first must address appellee, GCDHS's, assertion that appellant lacks standing to appeal the trial court's determination. In his reply brief, appellant counters that he was a party to the action, he has a right to defend his good name and reputation, and appellee waived the right to raise the issue by failing to object to it at trial.
Appellant was a party to the action by virtue of the allegation that his natural son, B.C., was a dependent child. Therefore, appellee had no grounds to object to appellant being a party to the action at the trial court level and did not waive the right to argue the issue in this appeal. Appellee does not contest appellant's right to participate in the hearing below, which involved his natural child, but contests his right to appeal a determination involving the disposition of his minor stepdaughter, who is not his natural child. Rather than appealing the trial court's disposition of his son, appellant disputes the finding that he sexually abused R.S., although it did not subject him to any criminal penalties.
As we held in State v. Spikes (1998), 129 Ohio App.3d 142,145, 717 N.E.2d 386:
 "When attempting to demonstrate injury, it is not enough to show a hypothetical or potential injury. State ex rel. Consumers League of Ohio v. Ratchford (1982), 8 Ohio App.3d 420, 424, 8 OBR 544, 548, 457 N.E.2d 878, 883. `Concrete injury in fact' must be established to have standing to mount a constitutional challenge. Id."
Appellant alleges that he has standing because he suffered an injury to his "good name and reputation" by being "unjustly labeled and slandered as a child sex abuser." We decline to decide whether the purported injury to appellant's reputation is sufficient to grant him standing to appeal a non-criminal determination in a juvenile proceeding. However, we rule that appellant has standing based on grounds not raised in the briefs.
In determining that appellant had sexually abused his stepdaughter, the court ordered appellant to attend and complete the STOP sexual offender treatment program or participate in individual counseling and complete a sexual offender program approved by GCDHS. The order directly affects appellant's rights and imposes an obligation on him. By not complying with this order, appellant would risk the custody of his natural child. Therefore, appellant has standing to pursue this appeal.
In his first assignment of error, appellant asserts that it was not proven by clear and convincing evidence that he had sexually abused R.S. because "[t]he only evidence in support of the complaint [was] the verbal, uncorroborated, impeached, ill-motivated allegation of the alleged, minor victim." In his assignment, appellant raises three issues, all of which argue that the trial court's ruling was against the manifest weight of the evidence. GCDHS counters that R.S.'s testimony was credible and that the trial court ruled correctly.
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. A reviewing court will reverse a judgment of juvenile court only upon a showing of an abuse of discretion. Inre Pieper Children (1993), 85 Ohio App.3d 318, 330,619 N.E.2d 1059, 1066-1067.
According to R.C. 2151.35(A), a finding of abuse must be made by "clear and convincing evidence."
 "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ladford (1954), 161 Ohio St. 469, 120 N.E.2d 118.
The only evidence presented by GCDHS was the testimony of R.S. and the two people assigned to investigate the case, Meredith Meyers and Detective Tevepaugh. The two investigators testified that they briefly interviewed R.S. and other family members and based their beliefs on her story. It appears that they took her at her word and made no further inquiry into the veracity of her story. No further physical evidence or testimony from counselors or therapists was presented to indicate that any further investigation was done.
Because there was no physical evidence of abuse in this case, the GCDHS case hinged upon the credibility of R.S.'s testimony. R.S.'s testimony was very vague as to times and dates of abuse occurrences. Though she said that abuse had occurred from fifty to one hundred and fifty times during the year and a half that they lived in Chardon, she could not pinpoint the day of last occurrence except to say that it had happened an unspecified number of weeks before, on a Wednesday. Her older brother A.S. contradicted her testimony about the incident that she testified he had observed.
While it is certainly understandable that a trial court would be especially hesitant to place a potentially abused child with her abuser, GCDHS did not present evidence sufficient to meet the clear and convincing standard that such abuse occurred. Appellant's first assignment of error has merit.
In his second assignment of error, appellant asserts that because of the numerous errors made by the trial court throughout the trial, he was deprived of a fair trial. GCDHS counters that this was not a criminal trial and appellant was not on trial.
Appellant complains that the trial court erred by: granting an ex parte restraining order barring him from the residence and prohibiting contact with the children; not granting a motion for continuance to allow him to review discovery; not allowing him free access to appellee's files; denying his right to have his own court reporter; and, "rushing to judgment" by making its determination immediately at the close of the hearing. Appellant was allowed to review all relevant discovery documents before the hearing.
Appellant asserts that the constitutional guarantees afforded to criminal defendants should also be afforded to him in this case, but cites no authority to support his position. Furthermore, appellant does not demonstrate how the supposed errors were prejudicial to him. Therefore, his second assignment of error is without merit.
Based on the foregoing, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
 _____________________ JUDGE ROBERT A. NADER
CHRISTLEY, P.J., O'NEILL, J., concur.