**[Cite as *Estate of Mikulski v. Centerior Energy Corp.*, 2025-Ohio-5041.]**

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

ESTATE OF JEROME R. MIKULSKI, :

      Plaintiff-Appellee, :

      v. :

CENTERIOR ENERGY :
CORPORATION, ET AL., :

      Defendants-Appellants. :

No. 114713

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 6, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-01-457866 and CV-02-490019

---

### *Appearances:*

Zagrans Law Firm LLC and Eric H. Zagrans; Dennis P. Barron, *for appellee.*

Skadden, Arps, Slate, Meagher & Flom LLP, Peter B. Morrison, pro hac vice, Allen L. Lanstra, pro hac vice, and Zachary Faigen, pro hac vice; Warren Terzian LLP and Thomas D. Warren, *for appellants.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendants-appellants Centerior Energy Corporation and First Energy Corp., as successor in interest to Centerior Energy Corporation ("Centerior"), and Cleveland Electric Illuminating Co. ("CEI") (collectively "defendants") appeal the judgment of the trial court granting class certification. Defendants raise the following assignments of error:

> 1. The trial court erred by certifying the Class and Subclass in violation of the law of the case doctrine.
>
> 2. The trial court erred by certifying the Class and Subclass because Plaintiff lacks standing.
>
> 3. The trial court erred by certifying the Class and Subclass because Plaintiff failed to satisfy the requirements of Rule 23(A).
>
> 4. The trial court erred by certifying the Class and Subclass under Rule 23(B)(3).
>
> 5. The trial court erred by certifying the Class and Subclass under Rule 23(B)(2).
>
> 6. The trial court erred by certifying the Class and Subclass under Rule 23(B)(1)(b).
>
> 7. The trial court erred by certifying the Issue Class and Subclass under Rule 23(C)(4).

{¶ 2} After a thorough review of the applicable law and facts, we reverse the judgment of the trial court and remand for the adjudication of the remaining claims.

## I. Factual and Procedural History

{¶ 3} The dispute between the parties began with four different lawsuits filed by Jerome and Elzetta Mikulski in 2001 and 2002 alleging claims of breach of

contract, breach of fiduciary duty, and fraudulent misrepresentation against various Ohio utilities, including Centerior Energy Corporation, Cleveland Electric Illuminating Company, and Toledo Edison Co.:[1]

1. *Estate of Jerome R. Mikulski v. Centerior Energy Corp.*, Cuyahoga C.P. CV-01-457866 ("*Centerior I*");

2. *Estate of Jerome R. Mikulski v. Cleveland Elec. Illum. Co.*, Cuyahoga C.P. CV-02-490019 ("the CEI case");

3. *Estate of Jerome R. Mikulski v. Centerior Energy Corp.*, Cuyahoga C.P. CV-02-490020 ("*Centerior II*"); and

4. *Estate of Jerome R. Mikulski v. The Toledo Edison Co.*, Lucas C.P. G-4801-CI-200206364-000 ("the Toledo Edison case").

**{¶ 4}** *Centerior I* and *Centerior II* have each been before this court while plaintiffs have attempted to certify a class action. *See Estate of Mikulski v. Centerior Energy Corp.*, 2011-Ohio-696 (8th Dist.) ("*Mikulski I*"), and *Estate of Mikulski v. Centerior Energy Corp.*, 2019-Ohio-983 (8th Dist.) ("*Mikulski II*"). The CEI case has not been before us on the issue of class certification.

**{¶ 5}** In *Mikulski II*, the panel summarized the pertinent facts as follows:

In their actions, the Mikulskis alleged that they "owned shares of common stock of Centerior and both of its predecessor companies, The Toledo Edison Company * * * and The Cleveland Electric Illuminating Company[.]" As this court explained in [*Mikulski I*], plaintiffs asserted that in the mid-1980's, Centerior began improperly manipulating its corporate earnings to appear more profitable. Centerior made payments to shareholders that it purported were dividend payments, which caused appellants to pay taxes on those payments as ordinary income. [Plaintiffs] argue these payments largely consisted of returns of capital, which were not taxable or taxable only at the lower rate

---

[1] Both Jerome and Elzetta Mikulski passed away during the pendency of the proceedings, and the Estate of Jerome Mikulski was substituted as a party ("Estate"). We will refer to the Estate and the class members as "plaintiffs."

applicable to capital gains.  According to [plaintiffs], this resulted in substantial overpayment of state and federal taxes for many years.

*Id.* at ¶ 2.

Plaintiffs alleged that Centerior's misstatement occurred because of Centerior's improper use of construction loan debt servicing costs in calculating its earning and profits ("E&P").  The calculation of E&P is important because any payment to shareholders up to E&P is accounted as a dividend and taxed as ordinary income, but amounts that exceed E&P are classified as a return of capital, which reduces the shareholder's basis in the stock — resulting in no current tax liability — or is taxed as a capital gain to the extent that the payments exceed the shareholder's basis.

*Id.* at ¶ 3.

In *Centerior I* — the instant case — plaintiffs' complaint set forth a claim for breach of a written contract and alleged that defendants "over-reported the amount or percentage of the 1986 distributions that was taxable as a dividend for income tax purposes" and provided "materially incorrect" information "with respect to the division between dividend and return of capital." Plaintiffs alleged that by "misreporting" the taxable dividends of the 1986 distributions, defendants breached the contract that they had with their shareholders.  Plaintiffs' complaint stated that they were bringing the instant action on behalf of all common shareholders of Centerior (including without limitation to its predecessor entities) and beneficial owners of Centerior common shares, who in 1987 received a Form 1099-DIV or substitute therefor from Centerior or its agents reporting the tax status of distributions made by Centerior during the calendar year 1986, and the communities comprised of them and their spouses, if any.

In January 2002, plaintiffs filed an amended class action complaint, which contained the same class definition as above and added a claim for fraudulent misrepresentation.  Defendants filed a joint answer and set forth defenses.  Defendants denied that the Form 1099-DIVs "over-reported the estimated amount or percentage of the 1986 distributions that was taxable as a dividend for income tax purposes" and "under-reported the estimated amount or percentage of the 1986 distribution that was a return of capital[.]"  [Footnote omitted]  Defendants also

wholly denied that it provided its common shareholders any materially incorrect information.

In May 2002, plaintiffs filed a motion for class certification.

Between 2002 and 2003, defendants removed all of plaintiffs' actions to the United States District Court of the Northern District of Ohio, rendering all of the motions before the court of common pleas moot by the removal.

Between 2008 and 2009, the United States District Court remanded the cases back to their respective court of common pleas for lack of jurisdiction. As a result, the cases proceeded to discovery and motion practice regarding class certification.

*Mikulski II* at ¶ 1-8.

{¶ 6} In 2009, the trial court denied class certification in *Centerior I*, finding that liability as to each plaintiff's claim could not be ascertained on a class-wide basis in a single adjudication. Centerior appealed this ruling in *Mikulski I*. In that appeal, the panel reversed the decision of the trial court and remanded the matter. The panel agreed that liability could not be determined on a class-wide basis because the class members could only prevail if they showed that they were actually damaged by Centerior's misstatements.

Centerior's misstatements could only have been harmful if they affected the plaintiffs' tax liability. Those class members who did not pay taxes in any relevant year in which they received a 1099-DIV from Centerior could not have suffered any actual damage from the misstatement. The individual question of whether the class member paid taxes and, if so, how Centerior's misstatement affected their tax liability, would predominate over common questions. The trial court did not abuse its discretion by finding that, for the class as defined by [the Estate], individual questions predominate.

*Mikulski I* at ¶ 15.

**{¶ 7}** The Estate also argued that the trial court should have amended the class definition rather than denying class certification. The *Mikulski I* panel noted that it was "unclear from the record in this case whether redefining the class to include only those individuals who filed tax returns for any of the years in question would cure the predominance defect and preserve Centerior's due process rights." *Id.* at ¶ 20. They further stated that a redefinition of the class could solve the predominance issue because damage could then be demonstrated on a class-wide basis. *Id.* The matter was remanded to the trial court "for further consideration." *Id.* at ¶ 21.

**{¶ 8}** On remand, in *Centerior I*, the Estate filed a second amended complaint, which amended the class definition and expanded the claims from just 1986 to 1987 through 1993.[2] It further limited the class members to shareholders "who paid a state or federal income tax for that year."

**{¶ 9}** The Estate later revised the class definition again, to change the dates to April 1986 through December 1993 and remove the requirement that the shareholder paid taxes. They further added a subclass:

> All members of the Class who were issued, in any of the calendar years 1987, 1992, 1993 or 1994, a Form 1099-DIV or substitute therefor by Centerior or its agents reporting the tax status of distributions made by Centerior during any of the calendar years 1986, 1991, 1992 or 1993, and who paid a state or federal income tax for any such year, excluding therefrom common shareholders and beneficial owners who sold such shares during the three full tax-reporting years immediately preceding the date of the entry of the Court's ruling certifying the Class (which had

---

[2] In 2015, the plaintiffs in *Centerior II* voluntarily dismissed their claims and merged the claims into *Centerior I*.

by that time been converted to shares of FirstEnergy Corp.), that is, on or after [here insert the date corresponding to the full three-reporting-year exclusion].

*Id.* at ¶ 16. The Estate maintained that the subclass was added in response to the opinion and remand instructions of this court.

{¶ 10} In addition to revising the class definition, the Estate further sought "the equitable remedy of disgorgement of the benefits Defendants received as the result of the misconduct." *Id.* at ¶ 17.

{¶ 11} The Estate also sought class certification in the CEI case, with nearly identical class and subclass definitions relating to CEI.

{¶ 12} The trial court in *Centerior I* granted class certification, finding that both the class and subclass satisfied the requirements of Civ.R. 23(A). The court further determined that the shareholder class was certifiable under Civ.R. 23(B)(1)(a), (B)(2), and (B)(3), and that the subclass was certifiable under Civ.R. 23(B)(3).

{¶ 13} The judgment was appealed, and the CEI case, where the court had not yet ruled on the class certification motion, was stayed pending the resolution of the appeal of *Centerior I*.

{¶ 14} In that appeal, *Mikulski II*, we determined that the subclass did not meet the predominance requirement because there was no common proof to establish injury for each member of the subclass. The court would have had to examine each member's tax liability in order to determine individual injury.

{¶ 15} The *Mikulski II* panel further determined that the class members lacked standing because they only suffered an "informational" injury when they received the incorrect Form 1099-DIV, which did not constitute a concrete injury in order to confer standing. *Mikulski II* acknowledged that *Mikulski I* recognized that it was the overpayment of taxes, not the misstatement, that constituted the injury. *Id*. at ¶ 64. *Mikulski II* ultimately held that the class members' receipt of allegedly incorrect Forms 1099-DIV was not sufficient to confer standing, and consequently the class members did not suffer "a concrete and particular injury" in order to confer standing. *Id*. at ¶ 74. The trial court's judgment was reversed, and the case was "remanded to the lower court for further proceedings consistent with this opinion." *Id*. at ¶ 76.

{¶ 16} On remand from *Mikulski II*, the Estate filed a status report in both *Centerior I* and the CEI case wherein it sought to assert four new injuries, move for partial summary judgment to determine if the injuries were cognizable, and, if so, move for class certification again. Defendants filed briefs in opposition to the status report.

{¶ 17} The trial court granted the Estate leave to file a motion seeking partial summary judgment on the issue of "whether Plaintiffs have alleged at least one injury cognizable under Ohio law." In its motion, the Estate argued that it and the potential class members had sustained three economic injuries from the fraudulent information reported on the Forms 1099-DIV: (1) from the falsely inflated dividend income, (2) from the falsely deflated returns of capital, and (3) from each plaintiff

possessing property of a different character than Centerior and/or CEI had represented. Defendants opposed the motion, noting that the Estate had not amended its complaint to allege new injury theories and that the new injury theories were not based upon any new facts or law.

{¶ 18} In January 2022, the Estate moved to consolidate *Centerior I* and the CEI case, which was granted.

{¶ 19} The trial court granted partial summary judgment in the Estate's favor in both cases, finding that no genuine issues of material fact existed as to whether the Estate had alleged a cognizable injury.

{¶ 20} The Estate then filed a "renewed" motion for class certification in each case, asking the court to certify the class and a subclass, relying on the trial court's determination that the Estate had alleged a cognizable injury on behalf of the proposed class. In *Centerior I*, the proposed class was defined as

> [a]ll common shareholders of Defendant, Centerior Energy Corp. ("Centerior"), and all beneficial owners of Centerior common shares, from April 29, 1986 through December 31, 1993, inclusive, who were issued, in any calendar year beginning in 1987 and continuing through 1994, inclusive, a Form 1099-DIV or substitute therefor by Centerior or its agents reporting the tax status of distributions made by Centerior during any of the calendar years from 1986 through 1993, inclusive, and the communities comprised of them and their spouses, if any, excluding therefrom:
>
> (a) Centerior, its predecessors, successors, affiliates and subsidiaries;
>
> (b) the present and former officers and directors of Centerior, its predecessors, successors, affiliates and subsidiaries;
>
> (c) counsel of record in this action and their respective parents, spouses and children; and

(d) the judicial officers who enter any order in this action and their respective parents, spouses and children.

A proposed subclass was defined as

> [a]ll members of the Class who exchanged their common shares of The Cleveland Electric Illuminating Company ("CEI"), and all members of the Class who exchanged their common shares of The Toledo Edison Company ("TE"), for common shares of Centerior in the corporate merger that occurred and/or was effective on or about April 29, 1986.

In the CEI case, the proposed class was defined as

> [a]ll common shareholders of Defendant, Cleveland Electric Illuminating Co. ("CEI"), and all beneficial owners of CEI common shares, from January 1, 1985 through April 29, 1986, inclusive, who were issued, in the calendar years 1986 and 1987 a Form 1099-DIV or substitute therefor by CEI or its agents reporting the tax status of distributions made by CEI during the calendar years 1985 and 1986, and the communities comprised of them and their spouses, if any, excluding therefrom:
>
> (a) CEI, its predecessors, successors, affiliates and subsidiaries;
>
> (b) the present and former officers and directors of CEI, its predecessors, successors, affiliates and subsidiaries;
>
> (c) counsel of record in this action and their respective parents, spouses and children; and
>
> (d) the judicial officers who enter any order in this action and their respective parents, spouses and children

The proposed subclass was defined as

> [a]ll members of the Class who exchanged their common shares of CEI for common shares of Centerior in the corporate merger that occurred and/or was effective on or about April 29, 1986.

{¶ 21} Within their motions, the Estate noted that the classes were materially identical to the class that the court had certified in 2018 in *Centerior I* but that it

had "address[ed] and cure[d]" the objections of this court, as set forth in *Mikulski II*. The Estate argued that it was no longer relying on an "informational" injury and instead was now claiming three economic injuries that occurred upon the issuance of Forms 1099-DIV. With regard to the proposed subclasses, the Estate argued that the members had suffered an additional economic injury "from Centerior's accounting frauds that put them at risk of losing their tax-free exchange treatment resulting from the [merger of Centerior and CEI]."

{¶ 22} The Estate noted that the trial court had already ruled that all four of the above injuries were cognizable injuries. It further asserted that it was relying on a new ground for class certification under Civ.R. 23(B)(1)(b), dealing with "common or limited fund" classes, along with the prior grounds of Civ.R. 23(B)(2) and (B)(3). The Estate argued that the new classes and subclasses met all of the criteria for class certification.

{¶ 23} Defendants opposed both motions for class certification, arguing that (1) class certification was barred under the law-of-the-case doctrine; (2) under *Mikulski II*, the Estate could only pursue injury based upon overpaid taxes; (3) the Estate could not seek class certification based upon theories not pled in its complaint; (4) the Estate still lacks standing to assert class claims; and (5) the class and subclass do not meet the requirements of Civ.R. 23(B).

{¶ 24} After a hearing where the parties appeared and presented arguments, the trial court granted the motion as to both Centerior and CEI for certification of the classes and the subclasses.

{¶ 25} Defendants then filed the instant appeal.[3]

## I. Law and Analysis

## A. Law-of-the-Case Doctrine

{¶ 26} In its first assignment of error, defendants argue that class certification was precluded by the law-of-the-case doctrine. Defendants contend that the *Mikulski II* Court already determined that the issuance of an incorrect tax form did not constitute a concrete injury to confer standing, and plaintiffs are precluded from raising new injury theories that could have been raised earlier in the case.

{¶ 27} We review de novo the issue of whether the law-of-the-case doctrine applies in a particular situation. *Frazier v. Rodgers Builders*, 2010-Ohio-3058, ¶ 60 (8th Dist.), citing *Nationwide Ins. Co. v. Davey Tree Expert Co.*, 2006-Ohio-2018 (11th Dist.).

{¶ 28} We note at the outset that the law-of-the-case argument can only apply to arguments raised by Centerior, not CEI. "The law-of-the-case doctrine provides that legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels." *Giancola v. Azem*, 153 Ohio St.3d 594, 595 (2018), citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). This is the first time any ruling related to class certification

---

[3] There was one appeal filed from both consolidated cases.

has been appealed from the CEI case; accordingly, there can be no law of the case from this court that is binding on CEI.

{¶ 29} Defendants argue that the law-of-the-case doctrine also pertains to "closely related" cases and therefore applies to CEI, citing *Klaus v. Klosterman*, 2016-Ohio-8349 (10th Dist.). However, *Klaus* is a Tenth District case that relied on a thirty-year-old district court case from Kansas, *Aguinaga v. United Food & Commercial Workers Internatl. Union*, 854 F.Supp. 757, 772 (D. Kan. 1994), in making such a pronouncement. Aside from a few other Tenth District cases also citing *Klaus* and *Aguinaga*, we cannot find an Ohio case on point that holds the same; we decline to create new precedent on this issue. Accordingly, we will examine this assignment of error solely as it relates to Centerior.

{¶ 30} Because the Estate had already had its day in court on its prior motion for class certification, it was not appropriate for the court to consider a second motion for class certification based upon new arguments. The Estate was not permitted a second bite at the apple, particularly after this court had reversed the trial court's granting of class certification in *Mikulski II*. While we note that the Estate labeled its motion a "renewed" motion for class certification, there was nothing to renew with regard to Centerior. The prior motion had been granted and then reversed on appeal.

{¶ 31} R.C. 2505.39 provides that

[a] court that reverses or affirms a final order, judgment, or decree of a lower court upon appeal on questions of law, shall not issue execution,

but shall send a special mandate to the lower court for execution or further proceedings.

The court to which such mandate is sent shall proceed as if the final order, judgment, or decree had been rendered in it. . . .

{¶ 32} On remand, the trial court was therefore required to proceed as though it had denied Centerior's motion for class certification. *See Frate v. Al-Sol, Inc.*, 1999 Ohio App. LEXIS 5582 (8th Dist. Nov. 24, 1999) ("The filing of a mandate . . . is a directive from this court to the common pleas court to 'proceed as if the final order, judgment, or decree had been rendered in it.'").

{¶ 33} The mandate issued in *Mikulski II* remanded the matter to the trial court "for further proceedings consistent with this opinion." The Estate asserts that this language "did not prohibit Plaintiff from renewing its class certification efforts."

{¶ 34} On the contrary, had we intended for the Estate to reargue the class certification issue, we would have made that clear in our mandate. Such a mandate concluded our opinion in *Mikulski I*:

Because the record is unclear regarding appellants' assertion that the fact of damage can be demonstrated simply by showing that a putative class member filed a tax return in any given year, this cause must be remanded to the trial court *for further consideration.*

(Emphasis added.) *Mikulski I* at ¶ 21. There were no such instructions accompanying the remand following *Mikulski II*. Rather, we reversed the trial court's judgment granting class certification, finding that the class lacked standing and that the subclass had not met the predominance requirement, and remanded for further proceedings *consistent with this opinion*. The case had to be remanded

for resolution by the trial court; it was not remanded for additional class certification proceedings.

{¶ 35} The Estate contends that *Mikulski II* did not state that the trial court could not reconsider any of the issues relevant to class certification. However, "when the trial court renders a decision on a particular issue, and that decision is both final and appealable, then following such appeal or waiver of appeal, the aggrieved party is precluded from resubmitting this same issue to the trial court in an effort to obtain a different result." *Rehoreg v. Stoneco, Inc.*, 2005-Ohio-12, ¶ 10 (9th Dist.).

{¶ 36} Here, the trial court had granted class certification; the decision was appealed and reversed. Consequently, the Estate was prohibited from resubmitting the issue of class certification to the trial court again. It makes no difference that the Estate asserted new injuries that it maintained would alleviate the standing barrier. The Estate did not seek to amend its complaint to add new allegations, and there was no additional evidence presented to support the newly claimed injuries. Indeed, the Estate fully acknowledges that its "renewed" motion for class certification was simply arguing different injuries than before — ones that it had hoped would allow it to evade the "informational injury" bar that had previously impeded the class claims. The "renewed" motion presented nothing that could not have been offered during the initial extensive briefing on class certification.

{¶ 37} The Estate argues that Ohio law allows for successive class-certification motions, citing *Rimedio v. Summacare*, 2007-Ohio-3244 (9th Dist.),

but *Rimedio* is distinguishable. In *Rimedio*, the appellate court had held in a prior appeal that the proposed class could not be certified because the only named plaintiff was not typical of the class. On remand, a motion to amend the complaint was filed, adding different named plaintiffs. The trial court denied a subsequent motion for class certification based upon the law-of-the-case doctrine.

{¶ 38} On appeal of that denial, the *Rimedio* Court noted that an attempt to recertify the class with the same named plaintiff would have violated the law-of-the-case doctrine, but there was no law-of-the-case violation with regard to the different plaintiffs that were named in the amended complaint. The appellate court reversed the trial court's decision and remanded for the court to consider the issue of class certification. Because *Rimedio* involved an amended complaint with different named plaintiffs, a successive motion was permissible. *Rimedio* has no bearing on the instant matter.

{¶ 39} Thus, the law-of-the-case doctrine is applicable to Centerior's subsequent attempt to certify a class, and the trial court was bound to follow our mandate in *Mikulski II*. On remand, the court could not consider, much less grant, class certification of the Estate's claims as they related to Centerior. The law of the case was that the class could not be certified based on the allegations in the complaint, where the class was defined as individuals who had received incorrect Forms 1099-DIV.

{¶ 40} To hold otherwise would open the door for the Estate to resubmit its motion for class certification ad infinitum, forcing defendants to contest, and the

courts to rule on, every successive submission. "[S]uch an approach would be impractical, imprudent and contrary to the concept of finality that resides in all court decisions." *Rehoreg*, 2005-Ohio-12, ¶ 12 (9th Dist.), citing *Gabbard v. Ohio Bur. of Workers' Comp.*, 2003-Ohio-2265, ¶ 33 (10th Dist.) (discussing the potential pitfalls with allowing repeated appeals of modifications to class certification). "Finality of judgments is necessary to allow litigants to proceed with their lives without fear of being brought back into court for another adjudication of the same cause of action." *Nickell v. Gonzalez*, 34 Ohio App.3d 364, 367 (1st Dist. 1986).

{¶ 41} As noted by the Ninth District, "had appellees [in *Rehoreg*] timely appealed the denial of class certification to this Court, then the decision of this Court would be conclusive and *further consideration precluded by law of the case*." (Emphasis added.) *Rehoreg* at ¶ 12, citing *State ex rel. Sharif v. McDonnell*, 91 Ohio St.3d 46, 47 (2001). Likewise, the decision in *Mikulski II* was conclusive and precluded further consideration of the issue of class certification based upon the same allegations in the complaint. The trial court therefore erred in granting Centerior's "renewed" motion for class certification.

{¶ 42} The first assignment of error is therefore sustained as it relates to Centerior and overruled with regard to CEI.

## B. Standing

{¶ 43} We will now consider defendants' second assignment of error as it relates to CEI. Defendants argue that plaintiffs lack standing because their "new"

claimed injuries are not concrete and they lack standing to seek injunctive or declaratory relief because they would not benefit from that relief.

{¶ 44} The sole claim alleged in the amended complaint against CEI is for fraudulent misrepresentation, for which plaintiffs only sought money damages. However, in the renewed motion for class certification (appropriately named in this instance since the CEI case had been stayed and the prior motion never ruled upon), plaintiffs altered the class definition, abandoned their claim for money damages, and instead sought equitable relief in the form of disgorgement.

{¶ 45} Plaintiffs sought certification of the class on the basis that the members suffered "immediate" injuries "upon the issuance" of the Forms 1099-DIV. The class consisted of shareholders who were issued Forms 1099-DIV in the calendar years 1986 and 1987. Plaintiffs also sought certification of a subclass that was made up of class members who had exchanged their CEI common shares for Centerior common shares as a result of the merger between Centerior, CEI, and Toledo Edison.

{¶ 46} Plaintiffs acknowledge that there was nothing new about the definition of the class. However, they claim that they can now establish standing based upon claimed injuries beyond simply informational injuries. We disagree.

{¶ 47} To establish standing, a plaintiff must demonstrate three factors: "'(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) the injury is likely to be redressed by the requested relief.'" *Windsor Realty & Mgt. v. N.E. Ohio Regional Sewer Dist.*, 2019-Ohio-3096, ¶ 13 (8th Dist.), quoting

*Moore v. Middletown*, 2012-Ohio-3897, ¶ 22. The plaintiff's injury cannot be abstract, suspected, or merely speculative. *FOP v. Cleveland*, 141 Ohio App.3d 63 (8th Dist. 2001), citing *In re Woodworth*, 1992 Ohio App. LEXIS 6269 (8th Dist. Dec. 10, 1992), citing *State ex rel. Consumers League of Ohio v. Ratchford*, 8 Ohio App.3d 420 (10th Dist. 1982). "A party's bald assertion that an injury occurred is insufficient to confer standing." *Torres v. Cleveland*, 2002-Ohio-4431, ¶ 26 (8th Dist.).

{¶ 48} The *Mikulski II* Court held that

> the Shareholder Class members' receipt of allegedly incorrect Forms 1099-DIV is not sufficient to confer standing. The Shareholder Class members did not suffer injury because, like the plaintiffs in *Smith [v. Bank of Am.*, 679 Fed. Appx. 549 (9th Cir. 2017)], they did not "file[] erroneous tax returns in reliance on the allegedly erroneous form or receive[] a smaller tax deduction as a result[.]" Therefore, they have not suffered a concrete and particular injury as is required for standing.

*Id.* at ¶ 73.

{¶ 49} The same result occurred in the appeal of the companion case filed in the Lucas County Court of Common Pleas against Toledo Edison. In that case, the plaintiffs had alleged a claim of fraudulent misrepresentation, claiming that Toledo Edison had mischaracterized distributions as dividends rather than a return of capital and thus the class members were subject to additional tax liability. The trial court had certified only a subclass, the members of which had paid taxes during the relevant tax years, but declined to certify the class, finding that the Estate had failed to demonstrate an actual injury. Toledo Edison appealed, and the Estate cross-appealed.

{¶ 50} The Sixth District reversed the decision granting certification of the subclass and affirmed the denial of certification of the class. *Estate of Mikulski v. Toledo Edison Co.*, 2021-Ohio-361 (6th Dist.) ("Sixth District Case").

{¶ 51} The injuries at issue in *Mikulski I,* the Sixth District Case, and those claimed to be at issue in the present appeal are based on the idea that receiving an incorrect Form 1099-DIV, without any related, articulated financial loss, constitutes a concrete injury. Plaintiffs have attempted to overcome the issue of demonstrating a concrete injury by obtaining an order from the trial court granting partial summary judgment on the basis that they had alleged a cognizable injury from (1) falsely inflated dividend income, (2) falsely deflated returns of capital, and (3) receiving property of a materially different character than the company had represented. Plaintiffs asserted that the receipt of the incorrect forms constituted binding determinations of the nature and amount of the distributions and that they were not permitted to contest or challenge those demonstrations to the Internal Revenue Service. They argued to the trial court that each of the above injuries violated their legally protected interests as follows:

Falsely inflated dividend income violated plaintiffs' right to:

Have CEI tell them the truth;

Accurate reporting from CEI concerning the tax status of the distributions paid to them;

Prepare and file accurate tax forms and returns;

Comply with federal and state income tax laws;

Not be put at risk of increased tax liabilities;

Not be put at risk of receiving smaller refunds;

Not be put at risk of the inconvenience and expense of having to amend their income tax returns; and

Not to be put at risk in their tax affairs.

Falsely deflated returns of capital violated plaintiffs' right to:

Make the proper required adjustments to the tax basis of their CEI shares;

Maintain accurate tax-basis records;

Know the correct tax basis in their CEI shares;

Not be put at risk of failing to comply with income tax laws in future dealings with their CEI shares; and

Not be put at risk of providing their donees with inaccurate tax information for any gifted shares.

{¶ 52} Plaintiffs further argued that they were injured by receiving property of a materially different character than that which CEI had represented and that CEI violated their interest in not being put at risk of losing the tax benefits resulting from the tax-free reorganization when CEI, Toledo Edison, and Centerior merged.

{¶ 53} Plaintiffs maintain that the above injuries were sufficient to confer standing upon the issuance of the incorrect Forms 1099-DIV, even without asserting a specific economic loss. In support of their argument, Plaintiffs rely heavily on a district court case from California, *Rovai v. Select Portfolio*, 2017 U.S. Dist. LEXIS 173846 (S.D. Cal. Oct. 18, 2017). In *Rovai*, the plaintiff alleged that the defendant had sent her incorrect mortgage interest tax forms. She asserted state claims along

with a claim under a federal statute that required the reporting of mortgage interest payments.

{¶ 54} *Rovai* followed *Smith v. Bank of Am.*, 679 Fed.Appx. 549 (9th Cir. 2017), which was also cited by the *Mikulski II* Court. In *Smith*, the plaintiffs sued a mortgage lender after they had received a Form 1098 that contained inaccurate information. The *Smith* Court dismissed the complaint, which was upheld by the Ninth Circuit, holding that the "mere receipt of an erroneous form, without more, is insufficient to establish Article III standing." *Id.* at 550. The Ninth Circuit noted that the plaintiffs had failed to allege that they had filed erroneous tax returns based on the inaccurate information or that they had received smaller tax deductions. *Id.*

{¶ 55} After *Smith* was released, the plaintiffs in *Rovai* amended their complaint to assert that because of the incorrect Forms 1098 and an incorrect method of calculating interest payments, Rovai had filed erroneous tax returns and received smaller tax deductions. The *Rovai* Court noted that "[a]n alleged injury of economic or overpayment" would establish a concrete injury and found that the claimed smaller tax deductions would constitute such an injury. *Rovai* at *12. Rovai's amended complaint contained allegations that the mortgage lender had credited certain amounts to principal rather than interest on her loan. The court stated that it could "understand how Rovai's mortgage interest tax deductions in 2011 and 2012 — which are deductions from her overall tax liability — would likely have been higher if even a single payment credited to principal in those years had been credited to deferred interest instead." *Id.* at *13-14.

{¶ 56} *Rovai* is not binding on our court; regardless, it is distinguishable. The court in *Rovai* was assessing the allegations at the pleading stage and determining whether Rovai had plausibly pled a claim upon which relief could be granted. The *Rovai* Court noted that it was only considering a facial challenge to subject-matter jurisdiction and stated that it would sua sponte revisit the question of standing at any time if it suspected that the standing requirements were no longer being met. *Id*. at *23.

{¶ 57} Plaintiff encourages us to follow *Rovai*, but if we were to conduct the same examination as *Rovai*, we would only look at the allegations in plaintiffs' amended complaint against CEI. As noted above, plaintiffs' amended complaint against CEI alleges a fraudulent misrepresentation claim seeking money damages. It was not until the class-certification stage that plaintiffs altered their assertions and the relief sought. But they did not seek to amend their complaint again to reflect the new class definitions or injury theories. Plaintiffs' amended complaint against CEI is void of any allegations relating to the injuries listed above.

{¶ 58} Nevertheless, *Rovai* involved an injury arising from erroneous tax deductions and not the mere issuance of the incorrect Forms 1098. Even if we were to go beyond the amended complaint allegations in the instant matter and consider the new arguments in the renewed motion for class certification, plaintiffs cannot demonstrate that their newly argued injuries constitute immediate and concrete injuries sufficient to confer standing. While plaintiffs maintain that the injuries asserted are now "exactly what *Smith* required," we disagree. *Smith* affirmed the

dismissal of a class action because the plaintiff had not alleged that she had overpaid taxes or received smaller tax deductions and therefore lacked standing

{¶ 59} We noted in *Mikulski I* that "Centerior's misstatements could only have been harmful if they affected the plaintiffs' tax liability[]" and recognized that the overpayment of taxes was the injury — not the misstatement on the forms. *Id.* at ¶ 15. This is the law in our district. Plaintiffs' claims of falsely inflated dividends and falsely deflated returns of capital based upon the issuance of an incorrect Form 1099-DIV still only identify a risk of harm and not an immediate injury as plaintiffs claim. And clearly the harm has not materialized in the nearly 25 years that these cases have been pending.

{¶ 60} Moreover, a claim for fraudulent misrepresentation has the following elements:

> "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance."

*Pedone v. Demarchi*, 2007-Ohio-6809, ¶ 28 (8th Dist.), quoting *Cardi v. Gump*, 121 Ohio App.3d 16, 22 (8th Dist. 1997), citing *Schlecht v. Helton*, 1997 Ohio App. LEXIS 114 (8th Dist. Jan. 16, 1997). The misrepresentation is a separate element from the injury and both must be shown. *See Mikulski II* at ¶ 63 ("Many appellate districts have recognized that the misrepresentation . . . is not the injury.") (collecting cases).

{¶ 61} Plaintiffs argue that a fraudulent misrepresentation claim does not require monetary loss and that the violations of their "legally protected interests" outlined above can constitute the harm. In their appellate brief, Plaintiffs specifically highlight the following interests as demonstrating the concreteness of their injuries: (1) their interest in complying with federal and state income tax laws, and (2) their interest in making the required basis adjustments to its CEI shares. Contrary to plaintiffs' assertions, though, violations of these interests still do not constitute a concrete and particularized injury.

{¶ 62} Plaintiffs bear the burden of calculating and explaining the immediate injury they suffered by the issuance of incorrect Forms 1099-DIV. Simply arguing that receiving a form reflecting falsely inflated divided income and falsely deflated returns of capital immediately injured them, without identifying any corresponding harm, is too speculative. Plaintiffs did not suffer any specific harm at the time that the Forms 1099-DIV were issued. As noted above, the claimed misrepresentation on the Forms 1099-DIV cannot also constitute the injury.

{¶ 63} In addition, with regard to other interests that plaintiffs assert were violated, simply being placed "at risk" of various consequences is not an immediate and concrete injury. *See Highland Tavern, L.L.C. v. DeWine*, 2023-Ohio-2577, ¶ 27 (The threat to plaintiff's position must be actual and genuine and not just possible or remote; the danger or dilemma of the plaintiff must be present, and cannot be contingent on the happening of hypothetical future events.).

{¶ 64} Further, Plaintiffs' claimed interests relating to CEI being truthful with them or accurately reporting distributions still do not demonstrate an injury-in-fact. "Perhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury. Apart from a showing of wrongful conduct and causation, proof of actual harm to the plaintiff has been an indispensable part of civil actions." *Mikulski II* at ¶ 59, citing *Felix v. Ganley Chevrolet, Inc.*, 2015-Ohio-3430, ¶ 36.

{¶ 65} Plaintiffs have failed to demonstrate how the mere issuance of the erroneous form caused them "immediate injury." As noted ad nauseam, no harm came to plaintiffs simply from the issuance of the incorrect form. Plaintiffs rely on several cases in support of their assertion that the mere issuance of a form constitutes an injury, to wit: *Flagstar Bank F.S.B. v. Airline Union's Mtge. Co.*, 2011-Ohio-1961; *LGR Realty, Inc. v. Frank & London Ins. Agency*, 2018-Ohio-334; *Thompson v. Cent. Ohio Cellular*, 93 Ohio App.3d 530 (8th Dist. 1994); and *Whitman v. Estate of Whitman*, 2018 U.S. Dist. LEXIS 74814 (S.D. Ohio May 18, 2018). However, these cases did not analyze the issue of standing and are unpersuasive for the case at hand. *See Corn v. Bd. of Liquor Control*, 160 Ohio St. 9, 19 (1953) (issue that was not alleged in the pleadings, discussed in the briefs, or ruled on by the court furnishes no precedent as to the present question); *State v. Winn*, 121 Ohio St.3d 413, 422 (2009) (Moyer, J., dissenting) ("Because our precedent does not firmly decide the issue before us, we cannot rely on it for authority.").

{¶ 66} The third injury claimed by plaintiffs is that they received distributions that were of a materially different character than what was represented on the Forms 1099-DIV that CEI issued to them. Plaintiffs contend that they are not required to demonstrate economic loss with regard to this injury and that receiving materially different property constitutes an immediate injury. In support of this, plaintiffs cite *Chandler v. Schriml*, 2000 Ohio App. LEXIS 2209 (10th Dist. May 25, 2000). However, *Chandler* also did not examine the issue of standing, and we decline to apply it.

{¶ 67} The fourth injury claimed by plaintiffs relates to the subclass. Plaintiffs claim that members of the subclass were put at risk of losing their tax-free treatment. This, too, does not constitute a concrete injury. By plaintiffs' own verbiage, there is only a "risk" of potential harm, and thus, it is a hypothetical injury, which is not sufficient to confer standing. While an injury can be "threatened" and still be sufficient to confer standing, the party "must demonstrate a realistic danger from the challenged action." *Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist. v. Republic Waste Servs. of Ohio II, L.L.C.*, 2009-Ohio-2143, ¶ 24 (10th Dist.), citing *State ex rel. Consumers League of Ohio v. Ratchford*, 8 Ohio App.3d 420, 424 (10th Dist. 1982), citing *Babbitt v. United Farm Workers Natl. Union*, 442 U.S. 289, 298 (1979). Plaintiffs have not demonstrated that there was any realistic danger from tax issues that occurred nearly four decades prior.

{¶ 68} We find that the class and the subclass have not alleged sufficient injury to confer standing and warrant class certification. Defendants' second assignment of error is sustained as to CEI.

{¶ 69} Defendants' third, fourth, fifth, sixth, and seventh assignments of error are rendered moot.

{¶ 70} The trial court erred in certifying the classes and the subclasses. Judgment reversed, and this matter is remanded to the trial court solely for resolution of the pending claims.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
DEENA R. CALABRESE, J., CONCUR